## Wytheville.

PAUL G. BLANFORD v. TRUST COMPANY OF NORFOLK.

June 11, 1925.

Argued before Judge Chichester took his seat.

1. LANDLORD AND TENANT—*Renewal of Lease—Tenant from Year to Year—Notice. to Quit—Case at Bar.*—A lease was for five years with an option to the lessor to renew for another five years or terminate the lease and pay for the improvements. If the lessor elected to terminate the lease he was to notify the lessee and to name a valuer and in default of such notice the lease should be deemed renewed for the second term of five years. The lessor failed to exercise his option and the tenant began his second five years' term.

*Held*: That the lessor covenanted pay for the improvements only in the event that he elected not to renew the lease and to take the building at the end of the first term of five years; that at the expiration of the second term of five years the lessee became a tenant from year to year; that a three months' notice to quit, which the Virginia statute provides for a tenancy from year to year, was sufficient; and that such notice need not name a valuer.

2. LANDLORD AND TENANT—*Lease—Estoppel—Lessor Claiming Improvements—Case at Bar.*—In the instant case it was claimed that a lessor, by his admissions and conduct and the interpretation placed on the lease, which had been assigned several times, by the parties, was estopped to claim the building on the property. The deed of lease gave the same information to the lessee that it gave to the lessor and if he had examined the records every fact disclosed by other assignments of the lease would have been brought to his knowledge.

*Held*: That both parties having had equal means of acquiring knowledge of the fact, the doctrine of estoppel could not be invoked against the lessor's estate.

3. ESTOPPEL—*Title to Real Property—Knowledge of the Parties.*—It is essential to the application of the principle of equitable estoppel, with respect to the title of real estate, that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the state of the title, but also of any convenient and available means of acquir-

ing such knowledge; and, where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel.

4. Estoppel—*Estoppel in Pais—Inference—Burden of Proof.*—The principles, which estop a person from claiming what is conceded to be his own property, are highly penal in their nature, and the authorities uniformly held that estoppels *in pais* are not to be taken by argument or inference, but must be certain to every intent. The burden of proof rests on the party relying on the estoppel, and it must be made to appear affirmatively by clear, precise and unequivocal evidence. Experience has shown that in controversies involving title to real estate, it is far safer to rely on written muniments of title than the slippery memory of man. Hence parol defeasances in such cases are not favored.

Error to a judgment of the Corporation Court of the city of Norfolk, No. 2, in an action of unlawful detainer. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*E. A. Bilisoly* and *J. W. Eggleston*, for the plaintiff in error.

*Robert W. Tomlin*, for the defendant in error.

West, J., delivered the opinion of the court.

Trust Company of Norfolk, administrator c. t. a. of George Newton, deceased, brought an action of unlawful detainer against Paul G. Blanford, to recover the possession of a building and the lot of land whereon it stands, in the city of Norfolk, Virginia. This is a writ of error to a judgment in favor of the plaintiff.

On July 1, 1815, Martha Newton and George Newton leased the land to William Stanhope, who agreed to and did erect a brick building thereon. The lease was

for a term of ten years, renewable at the option of lessors forever, on the same stipulations, rents and covenants as in the first term.   At the expiration of each term the lessors, their heirs or assigns, could, at their election, either renew the lease or enter on the premises, paying to the lessee, or his assigns, the valuation of the improvements, which was to be ascertained by three valuers, one appointed by each party, and an umpire chosen by these two.   The lessee agreed to pay $472.00 each year, in quarterly instalments, for rent of the land, and also to pay all taxes and levies imposed thereon.

In 1818, Stanhope assigned the lease to Seymour, trustee, to secure a debt due the Bank of Virginia.   In 1827 Stanhope and Seymour, trustee, assigned the building and Stanhope's rights in the leased premises to the Bank of Virginia.   On April 3, 1837, the bank assigned the building and the leased land on which it stands to John D. Gordon, Gordon assuming the obligations of the tenant.   Gordon held under this assignment until March 23, 1871, when George Newton and wife entered into a new deed of lease with John D. Gordon, at an annual rental of $550.00 for a term of five years from July 1, 1871, with the option on the part of the Newtons to grant a further term of five years from the expiration of the first five year term, or take the building at a value to be determined by valuers, as provided in the deed of July 1, 1815. .

The deed of March 23, 1871, provides, in part, as follows:   "And the said George Newton doth furthermore covenant, at his own election and option, either to grant a further lease of the said lot of land to the said John D. Gordon or his assigns for the term of five years commencing on the first day of July, 1876, and ending on the first day of July, 1881, the same yearly rent and

upon the like terms, covenants and conditions as are hereinafter set forth, and hereinafter stated, or to take the building on the said lot of land at a fair valuation thereof; and if the said George Newton, his heirs or assigns shall elect not to demise the said lot of land for the aforesaid term of five years, and shall decide to take at a valuation the buildings on the premises, the said George Newton, his heirs or assigns shall give at least ninety days before expiration of the term of this lease notice that he elects to take the said building at a valuation and not to demise the said lot of land for a further term of five years; and in default of such notice, then the lease of said premises shall be deemed renewed for the aforesaid term of five years, for the same yearly rent and upon the same terms, covenants and conditions as are herein contained.   And it is further covenanted and agreed that at the specified time for giving the notice aforesaid, the said George Newton shall notify the said John D. Gordon, or his assigns, of the valuer chosen by the said lessor who, with the valuer chosen by the said lessee, shall determine and fix the value of the building then standing on the demised premises; and that both of said valuers shall be master builders; and that the said valuers shall, before they commence to value the said building, select an umpire who shall be a master builder to decide between them in the event of their failure to agree upon the value of said building."

The first term of five years under this lease expired on July 1, 1876.   Newton failed to exercise his option to pay for the building and the tenant began his second term of five years, to expire July 1, 1881.   John D. Gordon having died, his administrator, on November 6, 1879, assigned the lease to James G. Womble.   In this deed of assignment George Newton is named as party of the third part, and his signature is attached

thereto.   The lease of 1871, which is being assigned, is set forth therein *in extenso*, except the signatures and certificates of acknowledgment.   The deed also states that Gordon's administrator, in consideration of the sum of $5,000.00, grants with special warranty to Womble "all of the right, title and interest, both at law and in equity, belonging to the estate of John D. Gordon, deceased, in and to said brick house and its appurtenances," and all of the "unexpired term yet to come in and to the leased premises."

The covenants therein contained, entered into by George Newton, are as follows:   "And the said George Newton covenants to and with the said parties of the first and second parts to this deed, that he will, and does hereby, accept the said Womble as his tenant, and doth allow him to be substituted as such in the place and stead of the said John D. Gordon, or his personal representatives; and that he will, and does hereby, release the said George W. Gordon, administrator, from all liability and responsibility to perform any of the covenants under and by virtue of the said lease, and will look to the said Womble for the faithful performance of the same."   Womble, in turn, obligates himself to perform all the obligations of John D. Gordon under the lease, "in as full a manner as John D. Gordon would be bound to do, if he were alive;" and finally it was understood and agreed by and between the said Newton and Womble that "for the residue of the said term the said lease and all the covenants therein are to be binding upon them and each of them in the same manner and with the like effect as if they were the original contracting parties to the said lease."

On July 1, 1919, Womble assigned his interest in the lease to F. W. Beazley and P. G. Blanford, for the sum

of $5,000.00.   On May 23, 1922, Beazley assigned his interest to Blanford.

All the assignees remained in possession during their respective terms, and paid the rent to George Newton until his death and then to his administrator, without their rights under the lease being questioned, until March 27, 1923, when George Newton's administrator served notice on P. G. Blanford, the plaintiff in error, to vacate the premises on July 1, 1923.

The only assignment of error is the action of the court in holding the notice served on Blanford by Newton's administrator to be a good and sufficient notice to vacate the premises, the same being insufficient in that it did not provide for a valuer, notice to vacate and appointment of a valuer on the part of the lessor being concurrent requirements, before Blanford could be compelled to vacate the premises.

The lease of 1815 was for a term of ten years, renewable at the option of the lessors forever.   It bound the lessors, if they elected at the end of any term to terminate the lease and take charge of the premises, to pay to the lessee the value of the improvements.   John D. Gordon, as assignee, was lessee under this lease for thirty-four years.   Under the deed of March 23, 1871, Gordon's absolute right to the possession of the property was for a term of five years only.

[1] Newton covenanted to pay for the improvements only in the event that he elected not to renew the lease and to take the building at the end of the *first* term of five years.   Newton having failed to exercise his option to renew the lease or to take the building at its fair valuation, Gordon's lease, under the terms of the deed, was automatically renewed for the second term of five years, at the expiration of which Gordon, his administrator or assignee, became a tenant from year to year

Only in the event that Newton elected not to renew the lease for a term of five years and to take the buildings at a valuation, did his covenant require him to give Gordon or his assignee notice of the valuer chosen by him. Since the Virginia statute provides that a tenancy from year to year may be terminated by giving written notice, three months prior to the end of any year of the tenancy, of intention to terminate the same, the notice in the instant case would seem to be sufficient.

In *Peirce* v. *Grice*, 92 Va. 763, 24 S. E. 392, the lease was made for a term of ten years, with an option on the part of the lessor to continue the same for another term of ten years, upon the same terms and conditions, or pay the lessee the value of the buildings, which the lease required him to erect on the leased premises. After the expiration of the first ten years the lessor continued the lease by allowing the lessee to occupy the premises and demanding and receiving the same rent therefor. The court held that the erection of the building was a part of the consideration for the lease; that the lessee was entitled to hold the leased premises for two terms of ten years each, unless the lessor exercised his option not to renew the lease for the second term and to pay the lessee for the building; that the lessee having occupied the premises for the full period of twenty years which he was entitled to, the lessor had, at the expiration of that time, the right to the possession of the premises, including the building.

*King* v. *Wilson*, 98 Va. 259, 35 S. E. 727, was an action of unlawful detainer by the lessor to recover the leased premises from the lessee. The lease was for one year or ten and contained this provision: "Renewable or pay for the improvements at their valuation." After the expiration of the second term of ten years, the lessee remained in possession, without any new agreement,

for over twenty years. The court held that a general covenant for renewal does not imply a perpetual renewal and binds the lessor on such covenant to give a renewal for one term only; that where the landlord allows a tenant for a term of years to hold over after the expiration of his term, without a new agreement, he becomes a tenant from year to year and the landlord had the right at the end of any year after the yearly tenancy began, after legal notice, to recover the premises in question, including the improvements, discharged of all obligation to pay the value of the same.

In *Powell* v. *Pierce*, 103 Va. 528, 49 S. E. 666, the lease was for a term of ten years with an option to the lessor, upon giving six months notice of his purpose, to renew for a second term of ten years. If the lease was not renewed the lessor covenanted to pay lessee the value of the buildings erected by him. The lease was continued for twenty years. The court reaffirmed the doctrine laid down in *Peirce* v. *Grice, supra,* and held that as the lease was continued for the full period which the lessee was entitled to, the lessor had, at the expiration of that time, the right to the possession of the leased premises, including the building erected thereon by the lessee.

Unless there be merit in some other objection urged by the plaintiff in error against the judgment complained of, the foregoing authorities are controlling in the instant case.

[2] It is earnestly insisted that George Newton, by his admissions and conduct, and the interpretation placed on the lease by the parties, is estopped to claim the building. The deed of 1879 contained a copy of the lease of 1871, and is a full and complete contract between Gordon's administrator and Womble. It disclosed the fact that the lease of 1871 would expire in

about twenty months, and conveyed to Womble, not the building, but "all of the right, title and interest, both in law and in equity, belonging to the estate of John D. Gordon, deceased, in and to the said brick house and its appurtenances, and all of the "unexpired term yet to come in and to "the leased premises."

Blanford and those under whom he claims cannot complain of Newton for permitting them to occupy the premises, without a renewal of the lease, as tenants from year to year, from July 1, 1881, to July 1, 1923. Such occupancy did not prejudice the rights of the lessees but made their lease more valuable.

Gordon's administrator had the right to assign his lease to Womble without the consent of Newton, and the only conceivable reason for having Newton sign the deed of 1879 was to bind him to accept Womble as tenant in the place and stead of John D. Gordon, or his personal representative, and to release the estate of John D. Gordon, deceased, from all liability and responsibility to perform any of the covenants contained in the lease, and look to James G. Womble for the faithful performance of the same.

The deed of 1879 gave the same information to Womble that it gave to Newton, and had Blanford, who claims through Womble, examined the records of the clerk's office of the city of Norfolk every fact disclosed by the other assignments of the lease would have been brought to his knowledge.   Both parties having equal means of acquiring knowledge of the fact, the doctrine of estoppel cannot be invoked against Newton's estate.

In *Carpenter* v. *Gray*, 113 Va. 525, 75 S. E. 303, the court said: "Without discussing generally the requisites necessary to constitute such an estoppel, it is

sufficient to say that there is one essential element lacking in this case, viz.: That the party claiming to have been influenced by the conduct of the other to his injury, was himself not only destitute of knowledge of the facts, but was destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

In *Camp Mfg. Co.* v. *Green*, 129 Va. 372, 106 S. E. 398, we find this: "Where the facts (touching the title) are disclosed by the record itself, as in this case, the doctrine (of estoppel) does not lie."

[3] In *Taylor* v. *Cussen*, 90 Va. 44, 17 S. E. 721, this court citing and quoting with approval from a decision of the United States Supreme Court, says it is essential to the application of the principle of equitable estoppel with respect to the title of real estate that "the party claiming to have been influenced by the conduct or declarations of another to his injury, was himself not only destitute of knowledge of the state of the title, but also of any convenient and available means of acquiring such knowledge; and, where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

[4] In *Newport News R. R. Co.* v. *Lake*, 101 Va. 334, 43 S. E. 566, discussing estoppel, the court said: "The principles, which estop a person from claiming what is conceded to be his own property, are highly penal in their nature, and the authorities uniformly hold that estoppels *in pais* are not to be taken by argument or inference, but must be certain to every intent. The burden of proof rests on the party relying on the

estoppel, and it must be made to appear affirmatively by clear, precise and unequivocal evidence. Experience has shown that in controversies involving title to real estate, it is far safer to rely on written muniments of title than 'the slippery memory of man.' Hence parol defeasances in such cases are not favored."

When Newton's conduct is tested by the foregoing principles, we find nothing to warrant us in holding that his administrator is estopped from claiming the building in question.

There is no error in the judgment complained of and it will be affirmed.

*Affirmed.*