# Staunton.

## G. B. SMITH v. N. H. PLASTER, ET AL.

September 20, 1928.

The opinion states the case.

*A. T. Griffith*, for the appellant.

*Clarence C. Burns* and *Walter H. Robertson*, for the appellees.

CAMPBELL, J., delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of Russell county, and the case displayed by the record is as follows: On June 13, 1921, N. H. Plaster, one of the appellees, filed his bill of complaint, in which it is alleged that on the 13th day of June, 1921, a contract in writing was entered into between complainant and C. D. Plaster, which contract is as follows:

"This deed, made this the 13th day of June, 1921, by N. H. Plaster and Marie L. Plaster, his wife, and C. D. Plaster, the grantors being of St. Paul, Virginia, and the grantee being of Swords Creek, Virginia; witnesseth:

"That for and in consideration of the sum of $11,-400.00, to be paid as hereinafter set forth, the parties of the first part do hereby sell and convey unto the party of the second part that parcel or piece of land lying and being in the county of Russell and State of Virginia, on Kent's Ridge in said county and State, and known as the 'Kate Duff Place,' conveyed to G. E. Ball, N. H. Plaster, J. M. Plaster, R. A. Plaster, S. G. Plaster, J. B. Plaster and C. D. Plaster by H. C. Stuart and Margaret C. Stuart under date of January 13, 1911, by deed, which deed is recorded in the clerk's office of Russell county, Virginia, deed book No. 47, at page 388, to which deed reference is hereby made for a more particular description of said land; the said tract of land containing by survey 117 87–100

acres more or less. The party of the second part agrees to pay for the land herein conveyed in the following manner, to-wit: $2,000.00 on June 13, 1923; $4,000.00 June 13, 1924; $4,000.00 June 13, 1925, and assume the payment of a mortgage against the said land in favor of the Fidelity Bank and Trust Company, of Knoxville, Tennessee, $1,400.00 with interest thereon from October 26, 1917, $200.00 of which amount is due and payable on October 25, 1921.

"The parties of the first part do hereby covenant that they are lawfully seized of said land; that they have a good and lawful right to convey the said land, and that there are no liens, judgments, etc., against the said land except those hereinbefore mentioned; and do hereby transfer unto the party of the second part all right, title and interest in said land to him to hold, or to his heirs to hold, forever, with the full right to sell and convey the said land hereinbefore conveyed.

"Witness our hands this June 13, 1921.

"N. H. PLASTER,

"MARIE L. PLASTER."

The bill further alleged that this contract was in effect a title bond or conveyance of the equitable title to the land mentioned; that complainant has, for a valuable consideration, transferred, endorsed, assigned and vested title to the notes mentioned in the contract, and that the same are held and owned as follows: Aaron Russ is holder of the $2,000.00 note; C. A. Hyburn and E. G. Hyburn are holders of the $4,000.00 note; and that W. P. Webb is holder of the other $4,000.00 note; that two of the notes are long past due; that it was the intention and purpose of said complainant and defendant to have reserved an express vendor's lien in said contract or title bond aforesaid, but by inadvertance this was not done, but, as complainant is advised and

alleges, the contract or title bond aforesaid does not convey the legal title to the said land aforesaid but merely an equitable title, and, therefore, under the law, the said notes aforesaid are secured by an implied lien on said land and are entitled to be enforced against the same; that complainant is advised that the said defendant, C. D. Plaster, has attempted to execute alleged deeds of trust on said land, one of said deeds being to U. T. Hubbard, trustee, to secure E. M. Evans two notes of $1,000.00 each, as set out in said deed, which deed is dated July 4, 1924, admitted to record July 7, 1924, in Russell county, deed book No. 69, page 204, and another to A. T. Griffith, trustee, to secure G. B. Smith the sum of $6,000.00, as set out in the said deed, which deed is dated May 7, 1924, and recorded May 7, 1924, in Russell county, deed book 68, page 546.

It is further alleged that the said trustees and beneficiaries in said deeds of trust had actual knowledge that the notes aforesaid were unpaid and that they constituted a lien on said land prior to their attempted deeds of trust, and expressly took in subservience thereto, and complainant further alleges that said contract giving to said defendant only an equitable interest the said trustees and beneficiaries under said deeds of trust, whether they had actual notice or not being immaterial, took their alleged deeds of trust subject to and in subservience to the liens of said notes for the purchase money due on said land.

The prayer of the bill is for a specific performance of the contract upon the part of C. D. Plaster, and in the event of a failure to comply with the terms on the contract, that the court declare a lien upon the land in favor of the note holders, and that the land be sold to satisfy

the lien. Aaron Russ, C. A. Ryburn, E. G. Ryburn, W. P. Webb, C. D. Plaster, U. T. Hubbard, trustee, E. M. Evans, A. T. Griffith, trustee, and G. B. Smith were made parties defendent.

To the bill of complaint G. B. Smith (who is sole appellant) filed his answer denying the allegation of the bill, and also filed his cross-bill, setting forth that the paper writing dated June 13, 1921, was duly signed and acknowledged as the act and deed of N. H. Plaster and Marie Plaster, his wife; that the alleged deed was duly recorded in the current deed book in the clerk's office; and that C. D. Plaster took possession of the land pursuant thereto.

It is further alleged in the cross-bill that on the .... day of May, 1924, N. H. Plaster and C. D. Plaster were heavily indebted to the Farmers and Miners Bank, a corporation chartered and doing business under the provisions of the laws of the State of Virginia, and were being pressed for the immediate payment of the said indebtedness; that N. H. Plaster thereupon represented that C. D. Plaster was the owner in fee simple of the 117 87-100 acre tract of land, that the said land was clear and free from liens and encumbrances and that he, the said N. H. Plaster, would arrange and secure the execution of a first mortgage upon the said lands to secure respondent if he would discharge six thousand dollars in obligations of N. H. Plaster and C. D. Plaster in the said Farmers and Miners Bank.

It is also alleged that the assertion of a lien by the note holders constitutes a cloud upon the title which appellant is entitled to have removed.

The prayer of the cross-bill is that a decree may be entered reforming the deed, executed by the said N. H. Plaster and wife to C. D. Plaster; that the liens and their priorities against the lands in the bill and proceed-

ings mentioned be determined; that the asserted claims of C. A. Ryburn, E. G. Ryburn, Aaron Russ and W. P. Webb be decreed to be void.

Thereupon, a decreed was entered in the cause, referring it to a commissioner to report the liens and priorities thereof and any other matter deemed pertinent. After a consideration of the exhibits filed in the cause, the evidence offered, and the law governing the case, the commissioner reported that C. D. Plaster was only the equitable owner of the land mentioned in the paper writing dated June 13, 1921, and thereafter, A. T. Griffith, trustee, and W. T. Hubbard, trustee, derived no better title than the title of C. D. Plaster, and were equitable purchasers only. The commissioner further reported that the assignees of the notes were entitled to a first lien upon the land and that as the land would not rent for a sum sufficient to satisfy the indebtedness in five years, it should be sold to satisfy the same.

It is assigned as error that the court erred in confirming the report of the commissioner.

It is the contention of appellant that the writing dated June 13, 1921, shows upon its face that it was executed as a deed; that it expressly purports to convey all the right, title and interest of the parties of the first part in the lands mentioned; that no lien is reserved to secure the payment of the purchase-money notes; that the failure to affix a seal to the instrument was a mere oversight.

Section 5141 of the Code provides: "No estate of inheritance or freehold for a term of more than five years, in lands, shall be conveyed unless by deed or will * * *".

One of the essential requisites of a deed is that it shall have a seal affixed thereto. "At common law a seal is universally defined, until recently, to be an im-

pression on wax, or some other tenacious material."
2 Minor's Inst., page 728.

By statute, section 5562 of the Code, the rule at common law has been changed to the extent that now any writing to which a natural person making it shall affix a scroll by way of seal shall be of the same force as if it were actually sealed.

In *Reusens* v. *Lawson*, 91 Va. 244, 21 S. E. 352, which was an action of ejectment, the court, on motion of the defendant, Lawson, gave the following instruction: "The court instructs the jury that the paper purporting to be a deed of conveyance from J. Miller Russell to H. O. Middleton, dated July 27, 1838, offered in evidence by the plaintiff, did not convey the legal title to the land therein mentioned, but only an equitable interest in said land—the said paper having no seal or scroll attached to the grantor's name, but said paper is sufficient basis upon which to found a claim or title; and if the jury believe that the plaintiffs, or those under whom they claim, held said land under that paper as a color of title, by adverse possession for the length of time required by law, then the plaintiff's right and title is as good as it would have been had that paper been a deed properly signed."

There was a verdict for the defendant and the plaintiff assigned as error the giving of the above instruction. The identical point was made in the instruction that is made in the bill of complaint, viz: "That the paper purporting to be a deed of conveyance, * * * did not convey the legal title to the land therein mentioned, but only an equitable interest in said land—the said paper having no seal or scroll attached to the grantor's name * * *."

In passing upon the assignment of error, Judge Buchanan said: "The correctness of this instruction

depends upon whether or not the original paper, a copy of which was read in evidence, was under seal. If it was under seal, it operated to convey all the title of the grantor, for it possessed all the other requisites of a good deed." The instruction was held to be erroneous, because the evidence demonstrated that the deed was an instrument under seal, but the inference is conclusive that if there was, as a matter of fact, no seal attached to the writing, it did not convey the legal title to the land.

The case of *Burnette* v. *Young*, 107 Va. 184, 57 S. E. 641, 12 Ann. Cas. 982, is, we think, conclusive of the question under consideration. The facts which are set out in the opinion of Judge Cardwell are as follows: Plaintiff was the owner in fee of a certain tract of land in Henrico county, containing 121 acres. On the 5th day of June, 1905, she signed a certain paper which she claimed was not a deed, but a contract to convey the land in fee simple to Omohundro and Casselman, with certain privileges reserved to herself to take back the land within a certain time. The acknowledgment of the paper was in due form and it was spread upon the records of the clerk's office. On the 11th day of October, 1905, Omohundro and Casselman conveyed the land to the defendant in error, Alice M. Young, who, after recording her deed, took immediate possession of the land, whereupon plaintiff in error brought an action of ejectment to recover the possession of the land. Plaintiff in error, to maintain the issue upon her part, sought to, and did prove that at the time of the delivery of the alleged deed there was no seal or scroll affixed, by way of seal, to the same, but that the seal, without her knowledge or consent, was subsequently affixed and added thereto. This evidence was not controverted. On the contrary, it appeared from

the evidence that, after the paper had been recorded, the husband of Mrs. Omohundro, discovering that the paper lacked a seal, called the attention of the clerk to this fact and a seal was added to the original paper by Omohundro and added to the record by the deputy clerk. After the admission of this evidence, it was thereafter, on the motion of the defendant, stricken out. Whereupon, it was sought by the plaintiff, without success, to have the jury instructed that the legal title to land in Virginia can only pass between the parties by deed; that no instrument in writing is a deed unless there is affixed to the signature of the signer a seal, or else a scroll, affixed by way of seal; and if the jury believe from the evidence that the alleged deed offered in evidence had no seal or scroll affixed thereto at the time the same was signed and acknowledged, then the instrument failed to convey the legal title from the plaintiff to the defendant, regardless of whether she intended to make a deed conveying the property or not. There was a verdict for the defendant, upon which the trial court entered judgment. In the opinion it appears: "The sole question presented is, whether or not the so-called deed of June 5, 1905, was sufficient in law to pass from plaintiff in error to defendant in error's grantors the legal title to the property in dispute, and the right to the possession thereof." After citing numerous cases sustaining the contention of plaintiff in error, the opinion reads thus: "The court is of the opinion that instruction 'C,' as asked for by plaintiff in error, was a correct instruction as to the law of this case, and the same should have been given  *   *   *."

We are of the opinion that the question involved in the instant case is ruled by the decision in *Burnette* v. *Young, supra,* and that there is no merit in this assignment of error.

■ It is further contended by appellant that, though it is held that N. H. Plaster retained a lien upon the land in question, and that the purported assignments carried that lien, yet that N. H. Plaster, the grantor, and his assignees are estopped to assert the lien by reason of the fact that they had knowledge of the superior rights of the beneficiaries in the deeds of trust. The matters relative to the question of estoppel may be thus summarized: N. H. Plaster had been cashier of the Farmers and Miners Bank of Honaker, Virginia, long prior to the year 1924. Numerous notes purporting to be executed by N. H. Plaster and C. D. Plaster, which had not been approved by them were discovered by the officials of the bank among the alleged assets of the bank. C. D. Fuller, one of the bank officials testified that N. H. Plaster, in order to secure time in which to arrange for payment of his overdrafts, induced appellant to endorse a note for $6,000.00, and to secure the payment of same had his brother, C. D. Plaster, execute the deed of trust securing this amount, stating at the time that the land was paid for.

While it may be inferred from reading the record that all the parties were present when these matters were being considered, it does not conclusively appear that Smith was present when it is alleged that N. H. Plaster said the land was unincumbered. The attitude of appellant may be best set forth by quoting his evidence:

"Please state your age, residence and occupation.

"Fifty-two years old, farmer, Swords Creek.

"Are you the G. B. Smith, party to this suit.

"Yes, sir.

' I will ask you to please state whether or not you paid off and satisfied in full the $6,000.00 note which you endorsed for C. D. Plaster at the Farmers and Miners Bank?

"Yes, sir.

"Have you that note?

"Yes, sir.

"Have you it with you?

"No, sir; it is up home.

"Will you file that note?

"Yes, sir.

"I will ask you to please state whether or not you are any relation to N. H. Plaster, C. D. Plaster, or their wives?

"None that I know of.

"I will ask you to state whether or not you were in any way obligated on the original notes that were taken up by you?

"None but the note I endorsed.

"As I understand you then you mean to state you had not endorsed any of the old notes?

"No, sir; I had not.

"Please state how it happened that you agreed to pick up these notes and execute your own in lieu of the others?

"The board of directors found there was some bad notes in there and they wanted to get this bad paper secured and they wanted certain notes secured on a deed of trust.

"Was any proposition made to secure you as the endorser of these notes?

"Yes, sir; they offered to give a deed of trust on this land, the Kate Duff place.

"State whether or not it was upon this proposition that you did endorse the note and pay it off?

"Yes, sir.

"Was this deed of trust executed and delivered to you at the same time you executed the note?

"Yes, sir.

"Would you have endorsed for N. H. Plaster and C. D. Plaster this amount had it not been for the execution of this deed of trust to you?

"No, sir; I would not.

"I will ask you to state whether or not there was any assurance given you at the time, or prior to the execution of this deed of trust, relative to the property in question being clear or unincumbered?

"I believe you told me the records were clear.

"To refresh your memory I will ask you if I did not state that L. E. Fuller was making an abstract for the Potomac Stock Land Bank, and that he told me the record was clear?

"It might have been.

"I will ask you to state whether or not you had any attorney to represent you?

"No, sir; I did not.

"If I understand you correctly your motive in taking up the notes in question and executing a $6,000.00 note endorsed by you solely for the purpose of securing insolvent paper which was found in the bank, and you accepting what you were advised and thought would secure you that amount of money?

"Yes, sir.

"Mr. Smith, you were a director in the bank at the time you took up these notes and endorsed this $6,000.00 note and took the deed of trust?

"I was a director ever since it was organized.

"That was several years ago?

"Not several years, I don't think the bank was in existence several years.

"Do you remember what notes were taken up?

"The best I remember one was a note of Bob Slate and one Bob Runyon, $2,000.00 and another $2,500.00, I can't recall at this time.

"N. H. Plaster was not on these notes at all?

"No, sir; I don't think he was.

"When was the note executed which you took the deed of trust for?

"I think it was about the 2nd of May.

"What year?

"1924.

"Did you state you had paid off the $6,000.00 note?

"Yes, sir.

"Who did you pay it off to?

"Mr. Bird and Lively.

"You made a conveyance of your property to your wife?

"Part of it; yes, sir.

"How much?

"To my home place.

"All the land you had?

"No sir; not to her.

"To some of your other relatives?

"To my boys.

"The receiver brought suit on this note after you made these conveyances to set aside these conveyances?

"I do not know about that.

"And you came here and paid it off?

"Yes, sir.

"Ever look at the records at all before you took this deed of trust?

"Mr. Griffith was sent by the board of directors.

"Mr. Griffith was representing the bank?

"Yes, sir.

"Who was representing you?

"Nobody.

"You didn't have any lawyer?

"No, sir.

"N. H. Plaster never united in any deed of trust to you at all?

"No, sir.

"Who gave you the note for $6,000?

"C. D. Plaster and wife.

"What was her name?

"Dora.

"You had no transaction with N. H. Plaster at all?

"No, sir.

"Who suggested that you pay off these notes and take it up this way?

"I think the board of directors suggested taking the deed of trust.

"Did they give you any assurance in taking this?

"They said if there was any loss they would stand by me.

"You took up the notes and endorsed C. D. Plaster's notes for $6,000, taking deed of trust from C. D. Plaster, at the request of your board of directors, who stated to you that in the event you suffered any loss that they would stand by you?

"That is about the substance of the talk, I think.

"Did you have any written agreement to this effect?

"No, sir.

"Who made this agreement with you?

"Mr. Griffith and Mr. Fuller.

"C. W. Fuller who has testified?

"Yes, sir.

"These three notes you took up as you have stated were past due notes, were they not?

"I imagine they were."

Nowhere does it appear in the evidence of appellant that N. H. Plaster informed him that the land in controversy had been paid for by C. D. Plaster. It does appear that counsel for appellant, upon information

furnished him by an examiner of title, stated to appellant that the land was unincumbered. Appellant further stated that N. H. Plaster was neither a joint maker of nor endorser upon the notes which were taken up by him.

While it is argued that the assignments of the purchase-money notes were made to Ryburn and others after the execution of the deed of trust in favor of appellant, we do not agree that the record supports the argument. The commissioner found against this contention and the trial court sustained the finding. While it does appear in the record that a paper denoting an assignment of the notes was executed after the execution of the deed of trust, this is explained in the brief as a paper taken as a matter of precaution, and in no sense indicative of the actual assignment, which was long prior to the execution of the deed of trust. This contention of appellees is strengthened by the omission in the cross-bill of any allegation that the note holders had any notice of the claims or equities of appellant. We are of the opinion that the doctrine of estoppel does not apply in this case.

In *Blanford* v. *Trust Co.*, 142 Va. 73, 128 S. E. 640, Judge West quotes with approval the doctrine laid down in *Carpenter* v. *Gray*, 113 Va. 525, 75 S. E. 303: "Without discussing generally the requisites necessary to constitute such an estoppel, it is sufficient to say that there is one essential element lacking in this case, viz: That the party claiming to have been influenced by the conduct of the other to his injury was himself not only destitute of knowledge of the facts, but was destitute of any convenient and available means of acquiring such knowledge; and that where the facts are known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel."

■ If the note holders, knowing that their assignor had misled appellant in order to get him to execute his note, had then taken an assignment of the notes, of course they would be estopped from asserting their lien. They would, in common parlance, "have stood in the shoes" of their assignor. But such is not the case. They were innocent holders of negotiable paper. Appellant had the same opportunity to examine the paper executed by N. H. Plaster as did the note holders. It was recorded in the clerk's office and was notice to the world of what it contained.

■ That the informant of appellant was in error as to its legal significance cannot avail appellant. The equitable rule that where one of two innocent parties must suffer the one least at fault should prevail, should be strictly applied in this cause. Here the appellees have parted with their money on the assurance that they were secured by a lien. If denied the enforcement of the lien, their only resourse is an action against an insolvent debtor. On the other hand, appellant testified that the board of directors of the bank suggested that he take the deed of trust, and that they stated if there was any loss they "would stand by him."

■ There is another aspect of the case which seems to us conclusive of the right of appellees to prevail. In the bill of complaint it is alleged that it was the intention of the Plasters to expressly reserve a vendor's lien in the paper of June 13, 1921, and it is prayed that the paper to this extent be reformed. There is no evidence controverting this allegation. Appellant also prays in his cross-bill for a reformation of the paper by converting it from a contract to convey into an actual conveyance. If this were done, the court, of necessity, would reform the paper *in toto* and thus establish the

lien securing the purchase-money notes. Appellees being, as we have held, *bona fide* purchasers of the notes, they would be entitled to enforce the vendor's lien.

We are of the opinion, therefore, that there is no error in the decree appealed from to the prejudice of the appellant, and that it should be affirmed.

*Affirmed.*