# Wytheville

HORACE HEATH AND WILLIE HEATH V. GEORGE VALENTINE, ET ALS.

June 9, 1941.

Record No. 2374.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Spratley, JJ.

*Clayton Schyphers,* for the appellants.

*Jones & Woodward,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

Kate Heath, colored, was the owner of a lot or parcel of land on Mary Street in the City of Bristol, Virginia, which she acquired by deed from H. G. Peters, special commissioner, dated August 5, 1903. She had three children, Willie, Ella and James. On April 5, 1912, by a good and sufficient deed, she conveyed to each of two of her children, Ella and James, described as residents, respectively, of Columbus, Ohio, and of Portsmouth, Ohio, a one-third undivided interest in the lot. Her signature to the deed was acknowledged before H. G. Lavinder, a notary public.

On October 5, 1929, seventeen years later, Kate Heath, as a widow, executed a deed of trust conveying the whole of the above land to H. G. Peters, trustee, to secure the payment of a note for $600, made by her and her son, James, payable to bearer three years after date with interest.

The deeds and the deed of trust were duly and promptly recorded in the Clerk's Office of the Corporation Court of the City of Bristol.

The name of the noteholder is not disclosed in the record, and he is not a party to these proceedings.

Kate Heath died before the note became due. Upon its maturity, H. G. Lavinder, an attorney at law representing the noteholder, took up the question of its payment with James Heath. As a result of their negotiations, an agreement in writing for the extension of its payment was entered into and signed by James Heath and Lavinder. This agreement, after describing the note and deed of trust of October 5, 1929, reads, in part, that James Heath "hereby expressly agrees that the security of said deed of trust shall remain unimpaired by the above extension, and *they* also agree to promptly pay said note at the expiration of the extension hereby granted, * * * and to faithfully keep and perform all the terms, covenants, and conditions contained in said deed of trust. Kate Heath, who also signed said note and trust, has since died leaving James F. Heath, as sole owner of said property."

On October 5, 1934, when the note again became due, a similar written agreement was entered into between H. G. Lavinder, attorney for the noteholder, and Willie and Horace Heath for an extension of the note for a further period of two years. Its last sentence stated,— "The said James F. Heath is now dead, leaving said second parties as his only heirs and sole owners of said property."

On October 5, 1936, a third similar agreement was entered into between the same parties. The one change in this agreement was the recital that the property, "more particularly described in the trust, is now owned by second parties who have assumed said trust."

The evidence of H. G. Lavinder, the sole witness in the case, was taken by deposition. He testified that James Heath applied to him in October, 1929, for a loan on the Kate Heath property for the purpose of improving it; that he "understood from James Heath that the property belonged entirely to his mother;" that he then

made the loan for one of his clients, evidenced by the $600 note and the deed of trust securing it; that the proceeds of the loan went into improvements on the property; that he was busy with his legal work at that time, and though he made an examination of the title, he was not as careful as he should have been, because he had a great deal of faith in James Heath; and that no question of the right of Kate Heath to convey the entire property came to his attention until the institution of a condemnation suit against the property in 1940.

He said that when the note remained unpaid in 1936, he wrote Horace and Willie Heath a number of letters, at the request of the noteholder, insisting upon the payment of interest; that having received no response to his letters, he requested the trustee to advertise the property, and advised the Heaths of the date of sale; that the Heaths failed to appear on the day of sale; that he bought in the property in his own name at the price of $600; that the purchase price did not cover the total debt, which, with interest and taxes, amounted to $755.05; that he paid the latter amount to the holder of the note in full satisfaction; that he immediately resold the property to George and Deborah Valentine for the sum of $850; and that a deed was made from the trustee to the Valentines, in which deed he and his wife joined as parties to transfer his right as a purchaser.

On February 5, 1940, the Housing Authority of the City of Bristol filed a suit in the exercise of its power of eminent domain for the purpose of acquiring the fee simple title to the lot in question. The petition alleged that the owners of the property proposed to be condemned were George Valentine and Deborah Valentine, his wife, of Bristol, Virginia, and Horace Heath and Willie Heath, of Cleveland, Ohio. These persons were made parties defendant.

Willie Heath and Horace Heath filed separate answers alleging that each owned a one-third undivided fee simple interest in the property.

George and Deborah Valentine answered and filed a cross-bill. Their cross-bil alleged that they were the sole owners of the property; and that Horace and Willie Heath were estopped from claiming any right, title, or interest therein by reason of "their own action in representing themselves to be the sole owners of the property and in assuming the said deed of trust, which purported to convey a fee simple title to the Trustee, and by refusing to make further payments on the said note, and allowing the property to be sold without protest, by their said actions, ratified and approved said sale by the said Trustee." The Heaths filed general demurrers to the cross-bill.

The principal and controlling question in this case is whether or not the evidence justifies the application of the doctrine of equitable estoppel against the appellants.

The general rule of equitable estoppel has often been considered by this court. In *Chesapeake & O. R. Co.* v. *Walker,* 100 Va. 69, 40 S. E. 633, 914, Keith, P., made an exhaustive review of its principles. Speaking for the court, he approved the following rule:

" 'The general rule of equitable estoppel, or, as it is frequently called, estoppel *in pais,* is that when one person, by his statements, conduct, action, behavior, concealment, or even silence, has induced another, who has a right to rely upon those statements, etc., and who does rely upon them in good faith, to believe in the existence of the state of facts with which they are compatible, and act upon that belief, the former will not be allowed to assert, as against the later, the existence of a different state of facts from that indicated by his statements or conduct, if the latter has so far changed his position that he would be injured thereby.' 4 Amer. & Eng. Decs. in Eq. 258.

"In order to constitute an estoppel: '1. There must have been a representation or concealment of material facts. 2. The representation or concealment must have been with knowledge of the true state of facts, unless

the party making it was bound to know the facts, or his ignorance of them was due to gross negligence. 3. The party to whom it was made must have been ignorant of the truth of the matter as to which representation was made. 4. It must have been made with the intention that the other party should act on it; but the place of intent will be supplied by gross and culpable negligence on the party sought to be estopped, if the effect of that negligence is to work a fraud on the party setting up the estoppel. 5. The representation or concealment must be proved to have been the inducement to the action of the other party. 6. The party claiming the estoppel must have been misled to his injury.'

■ " 'It may be stated, as a general rule, that the representation or concealment relied on to sustain an estoppel must have been made with full knowledge of the facts by the party to be estopped, unless his ignorance was the result of gross negligence or otherwise involves gross culpability, as where he is consciously ignorant of the facts at the very time of professing full knowledge of them.' 2 Amer. & Eng. Enc. L. (2d Ed.) 433-4. * * *

■ "But with respect to the estoppel under consideration which affects the title to real estate, there must be the express intention to deceive, or such careless and culpable negligence as amounts to constructive fraud."

The general rule has recently been approved in *Moyers Coal Corporation* v. *Whited*, 157 Va. 302, 312, 160 S. E. 43, and in *Thomasson* v. *Walker*, 168 Va. 247, 256, 190 S. E. 309, 110 A. L. R. 593.

■ The burden of proof rests on a party setting up estoppel *in pais*.

■ "In *Newport News R. R. Co.* v. *Lake*, 101 Va. 334, 43 S. E. 566, discussing estoppel, the court said: 'The principles which estop a person from claiming what is conceded to be his own property are highly penal in their nature, and the authorities uniformly hold that estoppels *in pais* are not to be taken by argument or in-

ference, but must be certain to every intent. The burden of proof rests on the party relying upon an estoppel, and it must be made to appear affirmatively by clear, precise, and unequivocal evidence. * * *

" 'Experience has shown that in controversies involving title to real estate it is far safer to rely on written muniments of title than "the slippery memory of men." Hence parol defeasances in such cases are not favored.' " *Blanford* v. *Trust Co. of Norfolk,* 142 Va. 73, 128 S. E. 640, 63 A. L. R. 1158.

See also 10 R. C. L., Estoppel, section 150, 21 C. J., Estoppel, section 267.

This proceeding is against the heirs of a person who is incapable of testifying. Virginia Code, 1936, section 6209, provides that in any such suit no judgment or decree shall be entered in favor of an adverse or interested party founded on his uncorroborated testimony. The testimony of such witness need not be corroborated on all material points, but must be supported on some fact necessary to sustain the judgment or decree.

We now come to a consideration of the evidence.

At the time of the execution of the deed of trust on October 5, 1929, according to the title records, Kate Heath owned a one-third interest in the property, Ella a one-third and James the remaining one-third. Ella died sometime before 1932, leaving a son, Horace Heath, who inherited her one-third. James died prior to 1934, and his one-third interest descended, one-half to his brother, Willie, and the other one-half to Horace, the son of his deceased sister, Ella. Therefore, at the time of the sale under the deed of trust, Willie had a one-sixth undivided interest in the whole property and Horace a one-half undivided interest, in addition to their interest in the equity, if any, in the one-third interest of Kate Heath, deceased.

The record discloses not a single word of evidence that Ella Heath made any statements or representations to anyone with reference to the ownership of the

property, or that she ever knew of the execution of the deed of trust by her mother. Nothing is shown whereby an estoppel could have been applied against her during her life.

Nor can an estoppel be applied against James Heath and his heirs, by virtue of James' alleged representation to Lavinder as to the ownership of his mother, unless there be some corroboration of the testimony of Lavinder. The fact that James Heath signed the note as a co-maker is not such corroboration. It is merely evidence that he loaned his name and credit as additional security for the payment of the note. It negatives any suggestion of an intention to deceive. The fact that the proceeds of the loan were used for improvements on property partly owned by him does not evidence fraud. By signing the note as a co-maker he made himself liable for the money expended.

The pleadings do not charge actual fraud against James Heath or the appellants. There is no evidence of fraud, actual or constructive. Lavinder testified that he did not think that James Heath "meant to misrepresent the title to the property at all."

Lavinder, a practicing attorney since 1903, experienced in lending the money of others on real property and examining the titles thereto, said that he did not rely entirely on the representation attributed to James Heath, but made an examination of the title in the local clerk's office, an examination which he admits was not as careful as it should have been. He was much better acquainted with the necessity of a good title to the entire property than the negro. He had a convenient and available means of acquiring knowledge of the true state of the title. While it does not necessarily charge him with notice of the contents of the deed, he had, as a notary public in 1903, taken the acknowledgment of Kate Heath to the deed conveying the two-thirds interest to her children.

The next question is whether the making of the agree-

ments for extensions of time for the payment of the note and the failure of Willie and Horace Heath to protest the trustee's sale of the property constituted such acts as to create an estoppel against them.

Lavinder admits that no question of the title of Kate Heath to the entire lot had arisen before him when the agreements were executed. How, then, can it be contended that either he or the other parties thereto intended to confirm the title of the entire property in her? In the absence of such question, there was before them nothing to affirm or to ratify. Consequently neither of the parties could have changed their respective positions in consideration thereof.

The non-payment of the note at its maturity led to the making of the agreements. It was in consideration of the extension granted that the Heaths agreed that the security theretofore taken should remain unimpaired and that they would keep and perform the terms, covenants and conditions of the deed of trust and pay the note. The only covenants and conditions were that the property would be kept insured and the taxes paid.

There was no agreement to enlarge the security of the deed of trust, but merely an agreement not to impair it on account of the extension of time for the payment of the note. Nothing was added to it and nothing was to be taken away. The Heaths assumed the debt, and left the security of the deed of trust as it stood. Beyond this, there was no affirmance or ratification of the deed of trust nor any agreement to convey to the trustee the property of James, Willie or Horace Heath, as additional security.

If Kate Heath had owned the entire property conveyed in the deed of trust, as Lavinder says he believed until 1940, there was no necessity for him to have her heirs ratify or affirm that conveyance or the sale thereunder in 1936. The agreements indicate that the personal liability of Willie and Horace Heath, as well as James Heath, for the payment of the note was desired.

The Heaths did not request the trustee's sale of the property. They were not required to come from Ohio to attend it; but had the right to rely on their title and to assume that the trustee could only sell such an interest in the land as Kate Heath had conveyed to him. They received no part of the proceeds from the sale, and made no representation to the purchaser to induce him to believe that he was acquiring the whole of it. In short, they did nothing which can be construed as an affirmation or ratification of the sale of the entire property. The facts do not bring this case within the rule enunciated in *Patterson's Ex'rs* v. *Patterson*, 144 Va. 1113, 131 S. E. 217, and similar cases relied on by the appellees, where the conduct of the parties sought to be estopped was such as to constitute fraud, actual or constructive.

We conclude that the evidence does not clearly, precisely and unequivocally establish the essentials of an estoppel *in pais*. The burden of such proof rested on the appellees, and they have failed to carry the burden.

For the foregoing reasons, we are of opinion that the learned chancellor erred in failing to hold that, in accordance with their respective shares in the land involved, Willie Heath was entitled to one-sixth and Horace Heath to one-half of the balance of the condemnation award remaining after the deduction of taxes and proper court costs. The remaining one-third of that balance was properly paid to George and Deborah Valentine, representing the interest they acquired through their purchase under the deed of trust from Kate Heath, deceased.

The decree complained of is reversed, and this cause remanded to the trial court for the entry of a decree in accordance with the views herein expressed.

*Reversed and remanded.*