# Richmond

## MAGDALENE LORETTA BALLARD v. PERCY M. COX, ET AL.

November 27, 1950.

Record No. 3699.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Gardiner, Wren & Gardiner* and *John Alexander*, for the appellant.

*John W. Rust*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

Miss Ballard, the appellant, instituted this suit to establish and probate the will of her sister, Mrs. Cox, which she alleged had been duly executed on November 19, 1947, but had been lost or destroyed. Mrs. Cox had died without issue on March 2, 1948, leaving surviving her husband, Dr. Cox; her sister, Miss Ballard; another sister, Emma Ballard; four children of a deceased sister and one child of a deceased brother. A copy of the alleged will was filed with the bill and it was averred that the original had been delivered to Dr. Cox after his wife's death, but it had not been offered for probate and he now denied any knowledge of it.

The will sought to be set up gave to Miss Ballard, the appellant, certain personal property, made various other bequests to relatives, to charity and church, constituted Miss Ballard a residuary legatee and appointed her and two others as executors. This was the second clause of the instrument:

"My husband, Percy M. Cox, having released and relinquished all right, title, and interest that he might have in and to my estate, I am disposing of my estate without reference to him, except as in the third paragraph; but my action is not to be taken as indicating any lack of affection for him."

By the third paragraph she gave to Dr. Cox her automobile and $1,000.

Dr. Cox filed an answer denying that his wife had made a will on November 19, 1947, or that she was competent to do so; and denied that such a will was ever delivered to him or that he ever knew anything about its being executed.

He averred that shortly after his wife's death Miss Ballard handed him a copy of a purported will, which he filed with his answer, but he had no information about its ever being executed. This copy is identical with the copy filed with the bill except its fifth clause gave wearing apparel and jewelry to a niece, while the copy filed with the bill makes Miss Ballard the beneficiary of those gifts. The answer further states that if the writing of November 19, 1947, is declared to be the will of Mrs. Cox, he renounces its provisions and claims his curtesy rights in her estate.

The case was referred to a commissioner who took evidence and then reported, among other things, that the will of November 19, 1947, had been duly executed by Mrs. Cox, who was then of sound mind and that it should be probated as such. The commisioner further reported that a writing made by Dr. Cox, on October 4, 1930, purporting to waive his interest in the tangible personal estate of his wife was invalid because without consideration.

By the decree appealed from exceptions filed both by appellant and appellees were overruled and the commissioner's report was confirmed except as to two items not here involved. The court also approved the renunciation of the will by Dr. Cox and decreed that he was entitled to his curtesy rights.

Appellant assigns as error the holding that the release made by Dr. Cox on October 4, 1930, was invalid. Dr. Cox assigns cross-error to establishing and probating the will. We shall deal with the cross-error first.

The defense that Mrs. Cox was incompetent to make a will was abandoned at the hearing. The evidence of competency, as the commissioner found, was overwhelming. The will of November 19, 1947, was prepared and its execution supervised by an attorney who testified in detail as to its preparation and introduced from his files a carbon copy of the will which was executed. The three attesting witnesses, two doctors and a nurse, testified to the due execution of the original. After its execution, at the direction of the

testatrix, the attorney mailed it to Miss Ballard by registered mail the following day. Mrs. Cox was then in a hospital being treated for cancer.

Miss Ballard testified that upon receipt of the executed will she put it in a safety deposit box in a Washington bank, where it remained until the day after Mrs. Cox died; that she then took it out and carried it to her apartment at the request of Dr. Cox, who wanted to see its provisions for funeral arrangements; that Dr. Cox then took the will away and when she asked about it some days later he told her to forget it, that it was in the hands of a lawyer; that two days later Dr. Cox asked her for a copy of the will and she gave him a copy which she had found among the effects of Mrs. Cox at the hospital, and where she also found a will that had been executed by Mrs. Cox in 1935, which she filed with the bill of complaint.

Dr. Cox testified that Miss Ballard never at any time delivered to him any executed will, but that a week or ten days after Mrs. Cox died she did deliver to him the undated and unsigned copy which he had filed with his answer. He also testified that in order to get the small balances on deposit to his wife's credit in two Washington banks he had Miss Ballard and her sister, Emma, sign letters to the banks authorizing them to turn these balances over to him. These letters, which were dated April 5, 1948, were also signed by Dr. Cox and stated that the three signers were the heirs at law and next of kin of the decedent and that no will had been found and it was believed that none had been left by the decedent. Miss Ballard testified that she read the letters but did not "remember reading what is in there."

Whatever the truth of that matter, the evidence clearly and conclusively establishes the execution of the will and its delivery to Miss Ballard, and there is no evidence at all that it was ever again in the possession of Mrs. Cox. When an executed will has been left in the custody of the testator and cannot be found after death there is a presumption of

revocation. *Jackson* v. *Hewlett*, 114 Va. 573, 77 S. E. 518; *Blalock* v. *Riddick*, 186 Va. 284, 293, 42 S. E. (2d) 292, 296. But when due execution is established, and it is shown that the will was not thereafter in the possession of the testator or accessible to him, no presumption of revocation arises on failure to find it. The presumption then is that it was lost and the burden of showing revocation is on him who asserts it. 57 Am. Jur., Wills, sec. 549, p. 378; Anno., 34 A. L. R. at p. 1310; *Williams* v. *Miles*, 68 Neb. 463, 94 N. W. 705, 707, 96 N. W. 151.

On her assignment of error the appellant argues that the release of October 4, 1930, was for a valid consideration; that there was no corroboration of the testimony of Dr. Cox on the question of consideration; and that he is estopped by fraud and deceptive conduct from denying the validity of the release. The writing in question is as follows:

"I hereby release and forever relinquish all the right, title and interest I now or may hereafter have in and to any furniture, rugs, statuary, objects of art, bric-a-bric, and other personal property which my wife, THERESE JULIE BALLARD Cox, now possesses and which she has heretofore brought or may hereafter bring into my present home in Washington or any other home I may hereafter provide for her, and I agree that the same may be regarded and considered in law and in fact her sole and separate property, to be sold, donated, bequeathed or otherwise disposed of by her."

It was signed by Dr. Cox but was not sealed and was acknowledged before a notary public.

This paper was introduced in evidence by the appellant on cross-examination of Dr. Cox. His testimony about it, which is all the testimony there is on the subject, was in substance as follows:

He and his wife were married in August, 1930. His wife then had a large stock of antiques in her shop in Erie, Pennsylvania, which she desired to dispose of rather than to bring them to his home, because she had an idea the laws of

Virginia would vest the title in him and she would be unable to dispose of them. She remained in Erie for about four months after their marriage, during which time she disposed of a number of the articles. She was loath to come to live with him, although he frequently wrote her and called her, urging her to do so. She would not consent to come until he wrote the statement. He wrote it in order to satisfy her and to bring her back to live with him. He told her he wanted her to sell some of the articles because they were cluttering up their home and he certainly would not prevent her from getting rid of them. There was no consideration for the writing and he signed it only in order to have her come and live with him as soon as she possibly could, and the sole object of it was to permit her to handle her own property as she saw fit.

She thereafter came to live with him in December, 1930, and brought with her a large number of antiques. To house them he built an addition to his dwelling and a small house at its rear at a cost of approximately $5,000. He said she made a few purchases after she came to live with him with money that he furnished her; that he turned over to her his monthly checks of $500 each, with which she paid the running expenses of the home and retained the balance. He was a lawyer employed in the Department of Justice for more than forty years, but was 76 years old and had retired at the time he testified.

There is no evidence that her refusal or reluctance to live with him was related to any fault of his. In her will she spoke of him as her beloved husband and stated that the method of disposing of her estate was not to indicate any lack of affection for him. Her malady was cancer of the face, for which she was hospitalized for several months in 1946, was back at home three or four months, then returned to the hospital in June or July, 1947, and remained there until her death on March 2, 1948. He visited her every day she was in the hospital and paid her hospital and

doctor bills, which amounted to between seven and eight thousand dollars.

The question, therefore, comes down to the narrow issue of whether a wife's agreement to come and live with her husband, who is not in fault, is sufficient consideration for his agreement to release his interest in her personal estate.

█ It is well settled, and in fact seems to be universally conceded, that it is not. The reason for the rule is plain and is well stated in *Young* v. *Cockman*, 182 Md. 246, 34 A. (2d) 428, 432, 149 A. L. R. 1006, 1011, as follows:

█ * * * "The mere promise of an undivorced wife to live with her husband and perform such duties as are ordinarily imposed upon her by the marriage contract is only a repetition of the promise made at the time the marriage contract was entered into. The law, seeking to regulate the marriage relation for the welfare of the State, will not allow married persons to discard this relation without justification and renew it for money."

See Anno. to that case, 149 A. L. R. 1012; *Litwin* v. *Litwin*, 375 Ill. 90, 30 N. E. (2d) 619, 622; *Johnson* v. *Johnson* (Tex. Civ. App.), 272 S. W. 225; *Frame* v. *Frame*, 120 Tex. 61, 36 S. W. (2d) 152, 73 A. L. R. 1512, and Anno. at 1518; *Bohanan* v. *Maxwell*, 190 Iowa 1308, 181 N. W. 683, 14 A. L. R. 1004; 26 Am. Jur., Husband and Wife, secs. 326, 327, pp. 923-25.

██ It is the duty of husband and wife to live together; each is entitled to the consortium of the other, and that includes the right of companionship, the duty of each to be the helpmeet of the other; each has the right to the society, comfort and affection of the other. 9 M. J., Husband and Wife, sec. 20, p. 509, 41 C. J. S., *Id.*, sec. 11, p. 401; 26 Am. Jur., *Id.*, sec. 9, p. 637. The promise to observe and perform these duties is implicit in the marriage contract. The keeping of that promise by the wife is merely the performance of her legal and moral duty and is not alone a valid consideration for a release by the husband of the rights given to him by the law in her property. That is all we have here.

■ Appellant says that the testimony of Dr. Cox that the release was without consideration cannot be the basis of a decree in his favor because his testimony is not corroborated as required by section 8-286, Code, 1950. That section has no application to this situation. Here the husband exercised his right to renounce the will and take the interest given him by the law. Code, 1950, secs. 64-13, 64-16. The burden was then on appellant to show that he had no such right. In an effort to do so she introduced in evidence the release signed by him but not under seal and not purporting to be for any consideration. She offered no evidence that there was any consideration. Dr. Cox thereupon testified there was none. He was a competent witness and appellant was then required to prove, if indeed she did not have that burden in the first place (20 Am. Jur., Evidence, sec. 147, p. 150), a valuable consideration. She failed to do so and hence the decree in favor of Dr. Cox was based upon the right given him by the statute, unaffected by the supposed release.

■ Appellant further argues that Dr. Cox is estopped from denying the validity of the release because of fraudulent and deceptive conduct. The evidence relating to the giving of the release, stated above, shows only that it was given by Dr. Cox for the purpose of inducing his wife to perform her legal and moral duty. He testified that her concern was to retain the right to make free disposition of her stock of antiques during her lifetime. There is no evidence that he ever interfered with that. Nor is there any evidence that he ever made any representation to her about the writing other than what the writing itself shows. Fraud has been shown only if it be fraudulent to repudiate a contract which the law calls invalid and unenforceable. If so, fraud would be inherent in practically any plea of want of consideration for a contract, and a defense authorized by one rule would be destroyed by another.

Appellant says Dr. Cox was a lawyer and if he did not know a consideration was required for the release he should

have known it; that Mrs. Cox trusted him and relied on the validity of the release prepared by him and that he thereby misled her to her injury.

Fraud is not to be presumed, but must be proved by clear and convincing evidence. 8 M. J., Evidence, sec. 55, p. 743. One of the essential elements of estoppel is that the person claiming it, or in whose behalf it is asserted, must have been misled to his injury. *Heath* v. *Valentine*, 177 Va. 731, 15 S. E. (2d) 98. Injury is not to be inferred from the doing of a legal duty. Prejudice to Mrs. Cox is not to be presumed from her going to live with her husband, even though she gave up her antique business in order to do so. She did only what she promised to do, what it was her duty to do, and there is no evidence that she suffered any pecuniary loss as a result.

The decree appealed from is

*Affirmed.*