## CIRCUIT COURT OF SHENANDOAH COUNTY

Mary R. Mumaw, Widow, et al.

v.

Raymond Frye et al.

### August 31, 1971

By JUDGE ELLIOTT MARSHALL

In this case the decedent, E. A. Mumaw, made a valid holographic will in 1945. He was later committed to the Western State Hospital where he was incarcerated until his death in 1959, suffering from dementia praecox.

He and his only living descendant, his son, James A. Mumaw, had been estranged for years and in his holographic will made in 1945 he disinherited his son except for a legacy of $500.00.

While incarcerated he received some communications from his son and wrote him on September 24, 1950 (in part):

> I wish to inform you that on Sept. 14, 1948, I *bequeathed* to you by my last, *"Will"*, my farm (Harpine) south of *Conicville*, Va., on west side of *backroad* after my *wife's death*, (*Mary R. Mumaw*) and my *own* death. This *nullifies* the *one* in (Lock-Box) Mt. Jackson, Va., - Bank: (Emphasis decedent's.)

Again, on October 8, 1950, (in part):

> Write to me in your *next letter*, the *bequest* I had given you by *Will*, to you in my other

letter so I know if *you* rec'd it as *written*. (Emphasis decedent's.)

Again, on January 31, 1951, (in part):

I am glad to know you rec'd my letter about the *"Will"*, to you of the *Harpine* farm, after *myself & Mary's*, death. Take care of your *letters*, as I have it *written & sealed* here in my *letter box*. (Emphasis decedent's.)

The decedent mentioned the will and its contents to his wife in her visits frequently until shortly before his death.

There is a room at the Hospital where papers and other valuables of patients are kept. Each patient has a box, but he is not permitted to enter the room. The room is kept locked, an attendant retaining the key. If a patient desires to deposit or withdraw anything from his box the attendant brings it out to him and later returns it to its place in the room.

After the decedent's death his box was delivered to his widow who placed it in her attic.

The 1945 holographic will was probated in 1959.

About five years after the death of the decedent his widow, without examining them, destroyed all of the papers contained in the box.

The Court has held that the decedent was possessed of sufficient mental capacity to make a will on September 14, 1948, the date mentioned by the decedent in the letter of September 24, 1950.

This proceeding originated as a suit for partition of the Harpine farm brought by the remaindermen under the 1945 will.

The son filed an "answer" averring that the decedent had left a valid holographic will dated September 14, 1948, which had become lost, and exhibiting the aforementioned letters to his son, praying for the affirmative relief of establishment of said lost will, or, as an alternative the probate of the aforementioned letters as holographic testamentary papers, or, as a second alternate, probate of the letter of September 24, 1950, as a testamentary revocation of the will of 1945.

It is unusual to see a partition suit turned into a suit for establishment of a lost will or probate of testamentary papers, but it appears that all necessary parties are present or have been served with process and no objection to the procedure has been noted.

Judge Lamb says that a court of equity which "sets up" a lost will has no real authority to probate it but must refer the will to the court of law to probate it. However, he points out that in several cases the equity court, after setting up the lost will, then proceeded to probate it and the Court of Appeals tacitly approved. *Va. Probate Practice* (1957), sec. 78, p. 177; *cf. Ballard v. Cox*, 191 Va. 654 (1950).

In no case in my knowledge has a court of equity ever admitted a will to probate, so anything said in this opinion concerning the probate of the three letters is academic and merely indicative of what I would decide were the papers properly offered for probate.

### Lost Will

In cases of lost or destroyed wills, the court requires the clearest of evidence to establish the same. In such cases it is the sufficiency of the evidence which must be carefully weighed. A court of equity will not establish a muniment of title without the clearest and most satisfactory evidence. *Tate v. Wren*, 185 Va. 773, 787, quoting *Wills and Administration*, Harrison, vol. 1, p. 278. *See also Blalock v. Riddick*, 186 Va. 284, 294.

The burden of proof rests upon the proponents to establish by satisfactory evidence the due execution of the 1933 will; its loss, its contents and that it had not been revoked. *Tate v. Wren, supra* at 782.

In the instant case there is no evidence that the decedent ever executed a valid attested will as required by Code Sec. 64.1-49. If he executed any valid will it must have been holographic. While it is probable that he knew how to make a holographic will because of his

success in the one of 1945, there is no direct proof that he did so. He did not say so in his letter of September 24, 1950. However, even if we were satisfied that he did make a valid holographic will on September 14, 1948, the insurmountable obstacle to its establishment is the language of the Statute, Code Sec. 64.1-49: (in part)

> If the will be wholly in the handwriting of the testator that fact shall be *proved* by at least two disinterested witnesses. (Emphasis added.)

In other words, the holographic will could not be *probated* without the sworn testimony of at least two disinterested witnesses. This, of course, in this case is an obvious impossibility. It could hardly be urged that a lost will could stand in better stead than one which is produced in court. It would be futile to "establish" it if it could not be probated.

I expect that this accounts for the paucity of cases where a lost holographic will was established. There would be few cases where two disinterested witnesses saw the lost will and would be prepared to testify that it was "wholly in the handwriting of the testator".

Strangely, no reference is made to the above quoted language of the statute in *Tate v. Wren*, 185 Va. 775 (1946), which involved an attempted probate of a lost holographic will written in 1939. Only one witness, the cook (an interested witness) testified that the lost holograph was "wholly in the handwriting" of the decedent, a circumstance which would appear to be decisive in view of the statute. However, the court somewhat laboriously opined that sufficient proof of the contents of the will was lacking and rejected the will on that ground.

In the instant case I think that we may have sufficient proof of the execution and contents of the will, but the proof required by statute for probate is lacking, and therefore, the will cannot be established. Therefore, it is unnecessary to decide whether the contents have been adequately proven or the presumption of revocation rebutted.

### The Letters of the Decedent
### As Dispositive Testamentary Papers

All of the letters obviously refer to a will previously made, dated September 14, 1948. While in no uncertain terms they described the property and estate to be devised to the son, none of them purports to be dispositive in effect, nor, collectively, can they be so construed. Accordingly, though wholly in the handwriting of the testator, none of them can be admitted to probate as dispositive testamentary papers.

In my opinion, neither can the letter of September 24, 1950, be probated as a testamentary paper serving to revoke the holographic will of February 19, 1945.

It refers to the will dated September 14, 1948, which obviously would serve to revoke the 1945 will and succinctly expresses his purpose:

> I have the *"Will"* written and in my *letter box* here in *Attendants' room.* This *nullifies* the *one* in (Lock-Box) Mt. Jackson, Va. - Bank. (Emphasis decedent's.)

In other words, he is saying that the will of September 14, 1948, in the letter box at Staunton, not the letter itself, revoked the 1945 will.

While the letter might be proven for probate by two disinterested witnesses it does not revoke the 1945 will, but merely states that another document does so. It plainly is not a testamentary paper.

I have given this case unusually mature consideration because I believe that the result I have arrived at may do an injustice and thwart the purpose of the decedent. I think it very likely that he made a perfectly valid holographic will which was inadvertently destroyed by his wife. However, we cannot bend the law to fit hard cases. The Wills Statutes are designed to protect decedents as well as beneficiaries and there must be at least substantial compliance with the law to establish and probate a testamentary paper.