Present:  All the Justices

PEGGY H. JOHNSON, ET AL.

v.  Record No. 002058     OPINION BY JUSTICE ELIZABETH B. LACY
                                        June 8, 2001
GENEVA H. CAULEY, ET AL.

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
Rodham T. Delk, Jr., Judge

In this appeal, we consider whether the trial court properly found that missing original testamentary documents were in the possession of the drafting attorney and were inaccessible to the testator, giving rise to a presumption that the documents were lost, not revoked.

Josephine S. Howell executed a will in 1985 and three codicils in 1987, 1990, and 1992.  Upon her death in 1999, the original of the 1990 codicil was discovered in a safe in Howell's former home, but only copies of the will and the other two codicils were found.  Three of her daughters, Amelia H. Spivey, Lynda H. Bond, and Geneva H. Cauley, and their children (collectively "Spivey") brought suit to establish the missing original documents as lost and to probate a copy of the missing will and codicils along with the original 1990 codicil.  A fourth daughter, Peggy H. Johnson, and her children (collectively "Johnson") filed a counterclaim, charging that the missing documents had been destroyed by Howell and were therefore revoked, not lost.

After an ore tenus hearing, the trial court found that the evidence conclusively established that Howell executed each of her testamentary documents in the offices of her attorney, J. Louis Rawls, Jr., pursuant to a comprehensive estate plan.  Furthermore, the trial court held that the evidence clearly established that the missing documents "were last specifically known to be in the possession of Mr. Rawls at his law office."  Rawls predeceased Howell, and the current members of Rawls' law practice did not know what happened to the original documents.

Based on the available evidence, the trial court considered the documents to be in the possession of the attorney and not in Howell's possession at her death, and found, as a matter of fact, that Howell had no "reasonable possibility" of access to the will and codicils while they were kept at the law offices.  Because Howell had neither possession of, nor access to, her documents, the trial court applied the presumption that the documents had been lost and concluded that the defendants had not met their burden to overcome that presumption with clear and convincing evidence that the documents had been revoked.  Accordingly, the trial court entered an order establishing the copies of the 1985 will, the 1987 and 1992 codicils, and the original 1990

codicil as the final will and codicils of Howell.  We awarded
Johnson an appeal.

Johnson raises four assignments of error.  These
assignments challenge the trial court's findings that the
documents were in the possession of Howell's attorney and that
Howell had no access to those documents.  Johnson also asserts
that in determining whether Howell had access to the documents
in question, the trial court used an erroneous test.

## I.

We begin by reviewing familiar principles applicable in
instances when original testamentary documents are missing.
Under such circumstances, two different presumptions are
available, depending on the last known location of the missing
documents.  First, if an executed will was known to be in the
testator's custody but cannot be found after death, there is a
presumption that it was destroyed by the testator animo
revocandi, that is with the intention to revoke.  Under these
circumstances, the proponents of a copy of the will must show
by clear and convincing evidence that the will was simply lost
and not revoked by the testator.  Second, if the evidence
shows that after execution the will was not in the possession
of the testator and not accessible to her, then a presumption
of loss arises.  The presumption of loss must then be rebutted
by clear and convincing evidence that the will was revoked by

3

the testator.  <u>Harris v. Harris</u>, 216 Va. 716, 719, 222 S.E.2d 543, 545 (1976); <u>Ballard v. Cox</u>, 191 Va. 654, 659-60, 62 S.E.2d 1, 3 (1950).  Which presumption is applied in a specific case depends on the threshold factual determination of whether the will was in the possession of the testator at death and, if not, whether the testator nevertheless had access to it prior to death.

## II.

In this case, the trial court determined as a threshold factual matter that Howell had entrusted the custody of her original will and codicils to her attorney and that Howell did not have access to them thereafter.  Johnson contends that the trial court erred in both of these findings.  First, Johnson asserts that the conclusion that the testamentary documents were in the possession of Howell's attorney "flies in the face" of the evidence that the only remaining original document was found in Howell's former home, that no original documents were found in Rawls' law offices, that originals of prior wills and codicils were kept by Howell personally, that members of Rawls' firm testified that they had never lost an original testamentary document in their possession, and that, although the records of the firm showed the firm's possession of testamentary documents, the records did not show that these documents were in the firm's possession.

4

As a trier of fact, a chancellor evaluates the testimony and credibility of witnesses. Advanced Marine Enters., Inc. v. PRC Inc., 256 Va. 106, 120, 501 S.E.2d 148, 156 (1998). Thus, a finding of fact, made by a chancellor who has heard the evidence ore tenus, carries the weight of a jury verdict, and will not be disturbed unless plainly wrong or without evidence to support it. Va. Elec. & Power Co. v. Buchwalter, 228 Va. 684, 689, 325 S.E.2d 95, 97 (1985). Here, in addition to the evidence cited by Johnson, there was testimony that Howell stated to others that her testamentary documents were at Rawls' offices and notations on copies of these documents indicated that the originals were at Rawls' offices. In light of this evidence, we cannot say that the trial court's finding that the documents were in Rawls' possession was plainly wrong or without evidence to support it.

### III.

Johnson next argues that even if the testamentary documents were in the possession of Rawls' law firm, the trial court erred in finding that Howell did not have access to them. We disagree with Johnson.

First, Johnson argues that in considering Howell's "accessibility" to the testamentary documents, the trial court required a "reasonable possibility of access" rather than simply a "possibility of access" as set out in our prior

5

cases.  Harris, 216 Va. at 719, 222 S.E.2d at 545.  Johnson claims that, by requiring proof that Howell had a "reasonable possibility" of access, the trial court transformed the standard from one of possibility to one of probability.

Johnson's argument is one of semantics.  The trial court's addition of the word "reasonable" was superfluous and did not impose a higher standard than that required by Harris. To the extent "reasonable" modifies "possibility," it restricts the circumstances of access to those that are "reasonable" rather than "unreasonable."  A "reasonable possibility" does not require probability.

Finally, Johnson argues that testamentary documents left with an attorney as custodian "obviously are accessible to clients," and, therefore, unless the custodial attorney testifies that the testator did not claim the documents or that the attorney lost or destroyed them, a testator must be considered to have access to the documents.  Such a definition of access, however, reflects the legal right of the testator to retrieve her documents but does not address the practical acts necessary to access testamentary documents for purposes of revoking them or reasserting physical control over them.

For example, in Ballard, the testatrix directed her attorney to mail the original will to her sister, Miss Ballard, who in turn put the will in her safe deposit box

where it remained until the testatrix's death. Miss Ballard delivered the original will to the deceased testatrix's husband, who denied having received the will. Miss Ballard sought to have a copy of the will admitted to probate. 191 Va. at 658-59, 62 S.E.2d at 3.

In admitting the copy to probate, the Court found that the evidence clearly showed that after executing the will, it was never again in the possession of the testatrix and the presumption of loss arose. Id. at 659-60, 62 S.E.2d at 3. Clearly, the testatrix had "access" to her will in the sense that she had the legal right to recover possession of it from her sister. Nevertheless, the facts indicated that the testatrix was in the hospital when she made her will and that she died approximately four months later. The lack of access necessary for the imposition of the presumption of loss was based on the factual record developed. It was not dependent on the testimony of any single witness or a generalized right of access to one's documents.

Thus, for purposes of determining whether the presumption of loss applies, a testator's access to testamentary documents entrusted to a custodian is a matter to be resolved by the fact finder based on the evidence produced.

This principle is consistent with cases from other jurisdictions that have addressed the issue. After

7

establishing that a will had been left in the hands of a custodian, those courts conducted a factual inquiry to determine whether the testator had access to the documents; the legal right to access the documents was not determinative. See, e.g., In re Estate of Mammana, 564 A.2d 978, 982 (Pa. Super. Ct. 1989); Thompson v. Dobbs, 234 S.W.2d 939, 941 (Tex. Civ. App. 1950); In re Pinney's Will, 72 N.Y.S.2d 895, 896 (N.Y. Surr. Ct. 1947); see also John P. Ludington, Annotation, Sufficiency of Evidence That Will Was Not Accessible to Testator for Destruction, in Proceeding To Establish Lost Will, 86 A.L.R.3d 980, § 8 (1978).

This principle is also consistent with our decision in Harris, in which we stated, "[i]f the possibility of access is shown that is controlling." 216 Va. at 719, 222 S.E.2d at 545. In Harris, the testator did not entrust his will to a custodian. The daughter who sought to have a copy of the will probated testified that, unknown to her father, she took his will to the second floor of his home, put it in her bureau drawer, and subsequently discovered it was missing. Sometime later the testator was transferred to a nursing home where he died. Id. at 718, 222 S.E.2d at 544. We concluded that the testator had access to the will because the will was in his home and he was physically active before he entered the nursing home "long after [his daughter] discovered that the

8

will was missing." Id. at 720, 222 S.E.2d at 545. The determination of accessibility in Harris, as in Ballard, was based on a consideration of the facts, not the legal entitlement of the testator to possession of his will.

Having rejected Johnson's contention that access was established in this case because the testator had a legal right to repossess her documents or because there was no affirmative testimony by the custodial attorney that the documents were either retrieved by the testator or lost or destroyed by the attorney, we now turn to Johnson's argument that the record was insufficient to show lack of access. Johnson relies primarily on the fact that Howell enjoyed good health, was able to go to Rawls' law offices by herself, and was not generally known by sight to Rawls' staff as evidence that supports a finding of access. In addition, Johnson cites testimony that the testator expressed concern about the fairness of her estate plan. However, the evidence in this case also shows that Howell entrusted the documents to Rawls, knew her documents were with Rawls, intended that they remain there, and commented that she had "everything on paper with my lawyers."

As we have already said, the trial court, as the finder of fact, was entitled to weigh the evidence and credibility of the witnesses. We cannot set aside a finding of fact unless

it is clearly erroneous or without evidentiary support.  See Advanced Marine and Va. Elec., supra.  We agree with the trial court that, on this record, only pure speculation would support a finding that Howell exercised her ability to access the missing will and codicils and retrieved them from Rawls' law offices after leaving them there in 1992.  Accordingly, we conclude that the record supports the trial court's determination that the missing testamentary documents were not in the possession of the testator and that she did not have access to them.

Thus, the documents were properly presumed lost and the burden shifted to Johnson to prove that Howell revoked the missing will and codicils by clear and convincing evidence. Johnson has not assigned error to the trial court's conclusion that Johnson did not produce clear and convincing evidence of revocation to rebut the presumption of loss.  Accordingly, we will affirm the judgment of the trial court.[*]

Affirmed.

---

[*] In light of this holding we need not address Spivey's assignment of cross-error.