# CIRCUIT COURT OF FAIRFAX COUNTY

In re Estate of Elbert Brown

Case No. CL-2013-0007298

In re Elbert Brown Trust

Case No. CL-2013-0004258

December 20, 2013

BY JUDGE ROBERT J. SMITH

This matter comes before the Court on Petitioner's motion to admit a copy of Elbert Brown's will and Petitioner's motion to modify Elbert Brown's trust. After considering the oral arguments made by counsel on both August 30, 2013, and November 18, 2013, the evidence presented by counsel, and reviewing the applicable legal authority, I grant the motion to admit the copy of Elbert Brown's will to probate and deny the motion to modify Elbert Brown's trust.

## *Background*

Elbert Brown ("Brown"), a resident of Fairfax County, died June 2, 2012. A Last Will and Testament ("Will"), dated January 9, 1992, purporting to be Brown's Will was rejected from probate on December 28, 2012, because the document presented had only the conformed signatures of Brown, the two witnesses, and the notary public. Because the probate section of the Circuit Court considered the purported will to be unsigned, Brown was declared to have died intestate, and Ms. Gloria Pitchford was appointed to administer Brown's intestate estate.

The document purporting to be Brown's Will created a separate, pour-over trust entitled "The Elbert Brown Revocable Trust" ("Trust"). Unlike the Will, the Trust document, also dated January 9, 1992, has a copy of both Brown's signature and the notary public's signature. First American Bank of Virginia originally administered the trust; now the successor to First American Bank, Wells Fargo Bank, administers the trust

No one knows today where the original Will is located. The Will and Trust were drafted by a law firm in Fairfax that no longer exists. The former partners of the firm produced an affidavit of the lost will ("attorney

affidavit") dated April 16, 2013, and an expanded attorney affidavit dated October 1, 2013, stating that the original Will and Trust documents were sent to an officer of First American Bank of Virginia (now Wells Fargo Bank ("Bank")) immediately after their execution. The attorneys further state that they do not have any indication, based on their records, that Brown intended to revoke his will. The attorneys who drafted the Will also witnessed the Will.

In addition to the attorneys' affidavits, the Bank submitted an affidavit of the lost will ("Bank Affidavit") dated April 9, 2012. The Bank states in its affidavit that (1) the Bank has administered the Trust since January 9, 1992; (2) the Bank has been in contact with Brown since January 9, 1992; (3) the Bank had received no indication from Brown, prior to his death, that he intended to revise or revoke his Will prior to his death; and (4) the Bank has searched all storage facilities and has not located an original copy of Brown's Will.

The respondent, however, disagrees with the statement provided by the Bank. In the respondent's opposition to admitting the conformed copy of the Will into probate, the respondent cites an email Brown sent to a few members of his family on June 23, 2007, in which he states that he is "in the throes of updating my Trust, Last and Living Wills, and Durable Power of Attorney." Respondent provided this email at the hearing on November 18, 2013, along with another email dated March 7, 2011, in which Brown allegedly tried contacting an attorney to update his will. The attorney subsequently replied to Brown, explaining that he (the attorney) does not draft wills. Other than these three emails, the respondent fails to provide any other evidence that Brown intended to revoke his will or that he took concrete steps toward updating or revising his Will.

Brown's Will named the Bank as personal representative of his estate and left all of his estate to the Trust. According to probate, the only asset outside of the trust and, therefore, subject to probate, is Brown's real estate worth $400,000. If the Will is valid, the Bank would be named as personal representative of the estate, and the proceeds from Brown's real estate would first be distributed as cash gifts to persons listed in Brown's Trust. After distribution of the cash gifts, when the estimated remaining Trust balance is $200,000, the Trust would become available to the descendants of Brown's parents to provide for their educational expenses. If, however, the Will is not valid, Gloria Pitchford would remain the personal representative of Brown's estate, and all proceeds from Brown's real estate would be paid to Brown's intestate heirs.

 

## Issues Presented

The issues now before the Court are (1) whether a conformed copy of the Will should be admitted to probate and (2) whether the institutional trustees should be permitted to modify the trust to eliminate the requirement that an institutional trustee administer the estate.

## Standard of Review

### A. *Validity of the Will*

Two issues are presented before the Court regarding the admission of the Will to probate. Accordingly, the Court must apply two standards of review.

The first standard of review applies in determining whether the presumption of revocation or the presumption of loss applies or whether either presumption has been rebutted. The Supreme Court of Virginia articulated how the Court should make this decision in *Johnson v. Cauley*, 262 Va. 40, 43-44 (2001):

> First, if an executed will was known to be in the testator's custody but cannot be found after death, there is a presumption that it was destroyed by the testator *animo revocandi*, that is with the intention to revoke. Under these circumstances, the proponents of a copy of the will must show by clear and convincing evidence that the will was simply lost and not revoked by the testator. Second, if the evidence shows that, after execution, the will was not in the possession of the testator and not accessible to her, then a presumption of loss arises. The presumption of loss must then be rebutted by clear and convincing evidence that the will was revoked by the testator. *Harris v. Harris*, 216 Va. 716, 719, 222 S.E.2d 543, 545 (1976); *Ballard v. Cox*, 191 Va. 654, 659-60, 62 S.E.2d 1, 3 (1950).

In addition to the first standard of review, the Court must undergo a second tier of analysis to determine whether a conformed (unsigned) copy of the Will may be admitted to probate under the lost will doctrine. Virginia Code § 64.2-403 specifies that "[n]o will shall be valid unless it is in writing and signed by the testator, or by some other person in the testator's presence and by his direction, in such a manner as to make it manifest that the name is intended as a signature." Virginia Code § 64.2-404 permits a writing that was intended as a will, even if it does not comply strictly with the requirements stipulated, above, by establishing the following standard:

[a]lthough a document, or a writing added upon a document, was not executed in compliance with § 64.2-403, the document or writing shall be treated as if it had been executed in compliance with § 64.2-403 if the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute (i) the decedent's will . . . [however] [t]he remedy granted by this section (i) may not be used to excuse compliance with any requirement for a testator's signature, except in circumstances where two persons mistakenly sign each other's will, or a person signs the self-proving certificate to a will instead of signing the will itself.

## B. Modification of the Institutional Trustee

Petitioner cites two reasons for modification of the Trust. First, Va. Code § 64.2-732(B) states: "The Court may modify or terminate a trust or remove the trustee and appoint a different trustee if it determines that the value of the trust property is insufficient to justify the cost of administration." Secondly, petitioner cites Va. Code § 64.2-730(A), which states:

The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification shall be made in accordance with the settlor's probable intention.

The burden is upon the party moving for modification of the trust to "prove that the circumstances upon which they rely to justify modification of the trust were 'not anticipated by the settlor'." *Ladysmith Rescue Squad, Inc. v. Newlin*, 280 Va. 195, 202 (2010) (citing Va. Code § 55-544.12(A) (current version at Va. Code § 64.2-730(A))).

### Analysis

## A. *Validity of the Will*

Virginia Code § 64.2-403 sets forth the requirements of a validly executed will. One such requirement is that, in order for a will to be considered valid, it must be in writing and signed by the testator "in such a manner as to make it manifest that the name is intended as a signature." The Code allows a writing to be treated as a will, despite having not complied fully with the Code's requirements, if the proponent of the document "establishes by clear and convincing evidence that the decedent intended the document or

writing to constitute . . . the decedent's will." Va. Code § 64.2-404. The allowance for evidentiary consideration by a judge, however, "may not be used to excuse compliance with any requirement for a testator's signature." *Id*. Probate may only admit original testamentary documents that comply with this statute.

In this case, the copy of Brown's Will, which is being presented to the Court to be admitted to probate, is not signed but rather bears a conformed signature. Conformed signatures are not specified as signatures recognized by Va. Code § 64.2-403. This fact alone, however, should not, in and of itself, prevent this Will from being admitted to probate for the reasons mentioned below.

Since the Court cannot, based on the conformed signature alone, determine whether the Will is void, the Court must undergo an additional analysis to determine whether the testator intended to revoke his Will or whether the Will is lost.

When original testamentary documents are missing, the Court must apply the appropriate presumption "depending on the last known location of the missing documents." *Johnson v. Cauley*, 262 Va. 40, 546 S.E.2d 681, 683 (2001).

> First, if an executed will was known to be in the testator's custody but cannot be found after death, there is a presumption that it was destroyed by the testator *animo revocandi*, that is with the intention to revoke. Under these circumstances, the proponents of a copy of the will must show by clear and convincing evidence that the will was simply lost and not revoked by the testator. Second, if the evidence shows that after execution the will was not in the possession of the testator and not accessible to her, then a presumption of loss arises. The presumption of loss must then be rebutted by clear and convincing evidence that the will was revoked by the testator. *Harris v. Harris*, 216 Va. 716, 719, 222 S.E.2d 543, 545 (1976); *Ballard v. Cox*, 191 Va. 654, 659-60, 62 S.E.2d 1, 3 (1950).

*Id*. The appropriate standard of review, therefore, is entirely dependent on who last possessed the original copy of Brown's Will. After reviewing the evidence, the testimony, affidavits, and emails presented to the Court, the Court believes that the testator did not possess the Will after execution but rather it was in possession of the Bank. The affidavits indicate that the attorney transferred the original document, along with the Trust, to the Bank immediately after its execution. Both documents are purported to be dated the same date, January 9. 1992. The signature was not photocopied because, according to the attorneys' affidavits, it was the firm's practice to conform copies of Wills. Additionally, the affidavits state that the firm

would not have conformed a copy unless the original was in full compliance with the applicable legal authority. Upon receipt of the Trust in 1992, the Bank has been effectively administering the Trust ever since. Since the Bank was sent the original Will along with the Trust, it follows that since the Bank received the Trust, it also likely received the Will along with the Trust in the same package. Thus, the Court is convinced that the evidence and circumstantial evidence indicate that Brown did not have access to the Will after execution and that the Bank last possessed the Will.

Ms. Pitchford, through her testimony, indicates to the Court that she "knew [Brown] held [his] own Will." Additionally, Ms. Pitchford presented to the Court emails dated March 7, 2011, allegedly authored by Brown stating that Brown desired to execute "an Addendum" to his Will. The Court finds these emails unpersuasive. Even if Brown executed a codicil to his Will, the Court is unable to determine, without the alleged document itself, the contents of the document. The emails only indicate to the Court that Brown was thinking about updating his Will. Without the alleged codicil to the Will, the Court cannot determine whether Brown actually acted on that intention prior to his death. Thus, all the Court is left with is the testimony of Ms. Pitchford. This testimony alone is unpersuasive to demonstrate that Brown last held the Will.

Since the evidence shows that, after execution, the Will was not in the possession of the testator and not accessible to him, the presumption of loss arises. The Court is not convinced by clear and convincing evidence that this presumption of loss has been rebutted and that the Will was revoked by the testator.

As discussed previously, Va. Code § 64.2-403 does not excuse a writing from complying with the signature requirement of a will. This section, however, only applies to documents that the Court is to treat "as if" they were executed in compliance with the statute. This "saving statute" does not apply to the case at bar because the original document, prior to its loss, did not need saving, it complied in full with the requirements of the statute.

Thus, the Court finds that the conformed copy of the Will should be admitted to probate.

## B. *Modification of the Institutional Trustee*

In addition to determining whether the Will should be admitted to probate, the Court must determine whether the appointed institutional trustees should be permitted to modify the trust to eliminate the requirement that an institutional trustee administer the estate.

Virginia follows the Uniform Trust Code, which has been codified in the Virginia Code, starting at § 64.2-700. The Code first specifies that a valid trust may be created by a will or by another disposition taking effect upon the settlor's death. Va. Code § 64.2-729(A)(1). "A trust is created only if: 1. [t]he settlor has capacity to create a trust . . . ; 2. [t]he settlor . . . indicates

an intention to create the trust; 3. [t]he trust has a definite beneficiary or is: a. A charitable trust. . . . " Va. Code § 64.2-720.

The Brown Trust meets all the requisite elements of a valid trust. *Broaddus v. Gresham*, 181 Va. 725, 731 (1942) ("Any words 'which unequivocally show an intention that the legal estate was vested in one person, to be held in some manner or for some purpose on behalf of another, if certain as to all other requisites, are sufficient' to create a trust.") (citing *Hammond v. Ridley's Ex'rs*, 116 Va. 393, 398 (1914)). Nothing has been presented to the Court to indicate that Brown did not have the capacity to create a Trust in 1992. In Article 1 of the Trust, Brown clearly states his intention to create a trust. Finally, the Trust specifies several, specific beneficiaries. Thus, the Court finds that the Trust is valid.

Petitioner cites two reasons why the Trust should be modified. First, Va. Code § 64.2-732(B) states that "[t]he Court may modify or terminate a trust or remove the trustee and appoint a different trustee if it determines that the value of the trust property is insufficient to justify the cost of administration." Secondly, petitioner cites Va. Code § 64.2-730(A), which states that:

> The court may modify the administrative or dispositive terms of a trust or terminate the trust if, because of circumstances not anticipated by the settlor, modification or termination will further the purposes of the trust. To the extent practicable, the modification shall be made in accordance with the settlor's probable intention.

The burden is upon the party moving for modification of the trust to "prove that the circumstances upon which they rely to justify modification of the trust were 'not anticipated by the settlor'." *Ladysmith Rescue Squad, Inc. v. Newlin*, 280 Va. 195, 202 (2010) (citing Va. Code § 55-544.12(A) (current version at Va. Code § 64.2-730(A))).

There are no cases on point in the Commonwealth that specify when a trust becomes uneconomical to administer. However, the National Conference of Commissioners on Uniform State Laws Comments state that:

> When considering whether to terminate a trust under either subsection (a) or (b), the trustee or court should consider the purposes of the trust. Termination under this section is not always wise. Even if administrative costs may seem excessive in relation to the size of the trust, protection of the assets from beneficiary mismanagement may indicate that the trust be continued. The court may be able to reduce the costs of administering the trust by appointing a new trustee.

In our present case, Brown specifically calls for an institutional trustee in Article XI(B)(1), along with three individual trustees, to manage the trust. Brown further indicates that, if, "after the grantor's death, there is no institutional trustee, the individual co-trustees shall appoint as institutional trustee a corporation authorized to provide trust services." *Id.* It seems clear to the Court that Brown intended for the trust to always have a non-individual trustee overseeing the administration of the trust. Brown anticipated the day where an institutional trustee may no longer exist to administer the estate, and even in that instance, Brown indicated that he desired that a non-individual entity have a role in the administration of his estate.

Accordingly, the Court finds that the party moving for modification of the trust did not bear its burden. The motion to modify the trust to eliminate the requirement that the Trust be administered by an institutional trustee is denied.