## CIRCUIT COURT OF HENRICO COUNTY

Maria Palesis

    v.

Vera Hlouverakis et al.

May 29, 2014

Case Nos. 13-275 and 13-500

By Judge Catherine C. Hammond

This matter is before the Court following a trial without a jury on April 2 and 3, 2014. After considering all of the witnesses' testimony at trial, the depositions and the numerous exhibits, and the arguments and post-trial briefs of counsel, there follow my findings of fact and conclusions of law. The objections to the evidence filed by Mr. Mottley on May 27, 2014, are sustained.

Nick Hlouverakis ("Nick") was born in 1927. He died on November 30, 2012. Two competing wills are offered. The first is a photocopy of a holographic will dated March 25, 2011. The second is a formally executed will dated September 9, 2012. The proponent of the 2011 Will is Maria Palesis ("Maria"), the decedent's niece. The proponent of the 2012 Will is Vera Hlouverakis ("Vera"), the decedent's widow.

Nick was born in Crete, immigrated to the United States, and achieved success. He married Vera, a Serbian national, on April 10, 2002. They lived in Henrico County. Residing nearby were Maria and her husband, John Palesis, Nick's sister, Helen Kiouppis, his brother and sister-in-law, John and Mary Hlouverakis, their son, Emmanuel Hlouverakis ("Manny") and his daughter. Maria managed Nick's rental properties, collected rents, and was his attorney-in-fact and co-owner of Nick's Wachovia bank account.

Nick was very particular about money and very frugal. Two spiral notebooks are revealing. They show Nick's handwritten itemized record of daily purchases right down to a pack of cigarettes bought in November 2012. Before marriage, Nick and Vera, who had been married four times

before, entered into a premarital agreement. *See* Va. Code § 20-147 *et seq.* The 2002 premarital agreement was drafted by an attorney, as were amended agreements in 2005 and 2009. The disclosures attached to the 2002 agreement state that Nick then had interests in real property worth $1.6 million plus other assets worth $876,270. Husband and wife agreed to waive all rights to inheritance, and Vera gave up her statutory right to receive the augmented estate. *See* Va. Code § 64.2-305.

On March 26, 2011, Nick went to his brother's home for a farewell luncheon before leaving for Serbia. Manny recalled how Nick reached into his coat pocket and produced a will, entirely handwritten and signed by him. Plaintiff's Exhibit 1 is a photocopy of that writing. Nick explained its contents to his family. Then Manny typed it to make it more legible. Nick read the typewritten document and signed several copies in blue ink, one of which is Plaintiff's Exhibit 2. Nick left the original writing on the kitchen table. John and Mary Hlouverakis corroborated this account. John, Mary, and Manny testified that Vera was present for all of this. However, Vera testified that she did not go to the luncheon. She did agree that Nick made the handwritten will, but she said that Nick tore it up later.

On the evening of March 26, 2011, Nick and Vera attended a family dinner at Maria's home. John Palesis was there, along with John and Mary Hlouverakis. Maria described how Nick presented her with Plaintiff's Exhibit 2, saying "I have a will." She identified Nick's signature. John Palesis also recalled that Nick presented a folder to Maria, with Plaintiff's Exhibit 2 inside, and John identified Nick's signature. On the following day, Nick and Vera went to Serbia, where they resided for the next eight months. Maria became increasingly worried when she was unable to contact her uncle.

On January 21, 2013, Maria and her husband learned about Nick's death when his neighbor called. The neighbor telephoned Maria with concern that someone was moving furniture out of Nick's house. Maria and John went over immediately and found Vera there. Vera told them Nick had died in November. It was at this point that Maria and John Palesis discovered Plaintiff's Exhibit 1 in Nick's home in Henrico. The original was never located after it was left on the kitchen table after lunch.

Several witnesses testified about the 2012 Will, Defendant's Exhibit 6. Vera described a lengthy process to prepare the document in Serbia, due in part to the fact that Nick did not read, write, or speak Serbian, and Vera did not read or write English. She testified that Nick made notes in English, which she changed to Serbian, and then presented to a Certified Court Interpreter named Slobodan Stojanovic with instructions to prepare a will in English. Vera asserted that, before signing the 2012 Will, Nick checked it carefully.

Mr. Stojanovic testified that he prepared the 2012 Will in English at Vera's request. Mr. Stojanovic never met Nick. He received all of the information from Vera, including the names of the attesting witnesses.

Vera recalled that, on her birthday, September 9, Nick told her he wanted to sign this will "like a present" for her. She described the event at their home in Barajevo. The two attesting witnesses, Zivanka Blagojevic and Stevan Grbic, gave depositions in Serbia just before the trial. Ms. Blagojevic speaks Serbian but not English or Greek, the two languages Nick used. Mr. Grbic speaks English and Serbian. They testified that Nick signed the 2012 Will, and each of them signed, all in the presence of one another. This would satisfy all the requirements of Virginia Code § 64.2-403. Another witness was present on September 9, a housekeeper, Zaklina Meduric, who communicated with Nick in Greek. Ms. Meduric, who stands to gain from the 2012 Will, testified that she did not see Nick sign any kind of document that day.

A forensic expert, Professor Darnek, examined the electronic files of Mr. Stojanovic. The expert examination showed that the 2012 Will was a document created after Nick's death.

The burden of proof is on Vera to show that Nick signed the 2012 Will in conformity with § 64.2-403 of the Code of Virginia. She did not satisfy her burden. The 2012 Will cannot be admitted to probate. It is clear from the evidence that the 2012 Will is an elaborate fake. There are so many preposterous circumstances undermining Vera's case.

First, deception is evident in the flawed contents of the 2012 Will. Nick's name is misspelled; Hlouverakis is incorrectly spelled "Hloverakis." The name of Nick's nephew is misspelled; Emmanuel is incorrectly spelled "Emanuel." This misspelling appears in the 2012 Will and also appears on Nick's death certificate, written in Serbian, where the name of Nick's father is recorded in error as "Emanuel." Plaintiff's Exhibit 3. It is reasonable to infer that Vera provided the names to the Registrar in Belgrade for the death certificate, just as she provided the names to Mr. Stojanovic for the 2012 Will. Maria's maiden name is incorrectly stated as Hlouverakis; she is the child of Nick's sister, Helen Kiouppis. The account balances are inaccurate. For example, the 2012 Will refers to the balance in the Wachovia account "estimated presently about US$15,000 [sic]." Nick was receiving his monthly Wachovia statements at his address in Serbia, and the August-September 2012 statement shows a balance of $28,998. It is inconceivable that a man who wrote down every pack of cigarettes he bought would make these errors. In contrast, the 2011 Will refers to the Wachovia account balance as "approx. $15,000.00 [sic]," and in fact the statement for March-April 2011 shows a balance of $15,555.

Second, Vera's testimony was contradictory and evasive. Part of the evidence was the admission that Vera was convicted in 2000 of the felony of grand larceny. The only reason this fact can even be considered is because it is probative of Vera's credibility. See Va. Sup. Ct. Rule 2:609(a)(i); 1-2 Va. Model Jury Instructions-Civil Instruction No. 2.140. The Supreme Court of Virginia explained this rule of evidence as follows.

> The offense of which the witness admitted he had been convicted was not only a felony but was of that character which men generally are not found to commit unless when so depraved as to render it extremely probable that he will not speak the truth. There are some felonious offenses which do not involve the perpetrator's character for truth, but this cannot be said of grand larceny . . . . While § 3898 has removed that disability as to the witness in question, evidence of such conviction was proper to go to the jury. It may be hard in many cases for a witness living an upright life to have his past misconduct brought before a jury, but there are other considerations affecting other persons which warrant this being done.

*Davidson v. Watts & Flint*, 111 Va. 394, 397-98 (1910). We may live in an age when a felony conviction no longer carries the stigma it once did, but the law has not changed with respect to the effect of the conviction when a witness is testifying about her interest in obtaining money.

Finally, from the testimony of Professor Darnek, together with Mr. Stojanovic's incongruous explanations, it must be concluded that the 2012 Will was not prepared until after Nick's death. It is somewhat astonishing that the two attesting witnesses would give false testimony, but there you have it.

Finding that the 2012 Will cannot be admitted, the question is whether Maria has satisfied her burden to prove the 2011 Will.

There is no impediment to the probate of a handwritten will once it is established by two disinterested witnesses who show that it is "wholly in the testator's writing." Va. Code § 64.2-403(B); *see Moyers v. Gregory*, 175 Va. 230, 233 (1940). Here, three disinterested witnesses identified Nick's handwriting and signature: John and Mary Hlouverakis and John Palesis. However, Vera argues that it is invalid because it is a photocopy, not an original, and because Nick revoked it.

When an original testamentary document is missing, as here, and its last known location was not in the possession of the testator, the law presumes that it was lost. *Johnson v. Cauley*, 262 Va. 40, 43 (2001) (citing *Harris v. Harris*, 216 Va. 716, 719 (1976)). The presumption applies because the original was left on the kitchen table. Leaving it there made sense because John, Mary, and Manny all thought that Plaintiff's Exhibit 2 was a replacement for Plaintiff's Exhibit 1. Nick signed Plaintiff's Exhibit 2 in the presence of John, Mary, Vera, and Manny, and it follows that the original was then of no importance to Nick. There was no credible evidence to rebut the presumption of loss.

Plaintiff's Exhibit 1, a photocopy of the 2011 Will, will be admitted to probate.

In addition to the prayer to admit the photocopy, Maria's Complaint also seeks (1) probate of the typed version of the handwritten will (Plaintiff's Exhibit 2), (2) an accounting of Vera's expenditures of Nick's assets from March 26, 2011, to the present, and (3) an award of attorney's fees.

In seeking probate of Plaintiff's Exhibit 2, Maria relies on Virginia Code § 64.2-404. This is a recent statute adopted as part of a uniform act. It requires the testator's signature plus clear and convincing evidence that "the decedent intended the document or writing to constitute (i) the decedent's will . . . . " It is a departure from the traditional requirement for witnesses which safeguards against fraud and forgery. In the unusual circumstances of this case, the evidence is sufficient to meet the high standard. As noted above, John, Mary, and Manny saw Nick sign Plaintiff's Exhibit 2 even though they did not sign as witnesses. Also, Maria's account of the dinner on March 26, 2011, when Nick handed her Plaintiff's Exhibit 2 and said "I have a will and these are copies for you and your mother" was credible. Finally, the handwritten and typed documents appear identical in content.

The claim for an accounting is denied. Maria did not cite any Virginia case in support of her claim. She cited one Eastern District of Virginia case, *McClung v. Smith*, 70 F. Supp. 1384 (E.D. Va. 1994), but the facts in *McClung* are different. *McClung* was a legal malpractice action by the wife against her attorney for the attorney's failure to secure an accounting of the husband's mishandling of the wife's separate funds during the marriage. *Id.* at 1390. In *McClung*, the Court found that the husband was acting as the wife's agent for the purpose of obtaining and using her separate funds to purchase certain properties and that the wife would have been entitled to an accounting of these funds "by virtue of breach of [the husband's] fiduciary duty [to the wife]." *Id.* at 1403-04. Vera was not acting as Nick's agent after his death. Maria is not entitled to an accounting of Maria's expenditures in the case at bar.

The claim for attorney's fees is denied. Virginia adheres to the "American Rule" with respect to attorney's fees, and "ordinarily, attorneys' fees are not recoverable by a prevailing litigant in the absence of a specific contractual or statutory provision to the contrary." *Lannon v. Lee Conner Realty Corp.*, 238 Va. 590, 594 (1989).